CHARLES F. BURTON, RECEIVER v. WILLIAM SCHILDBACH ET AL.

*Accounting for loans made by a void corporation.*

A corporation organized under a void law cannot enforce a mortgage made to it; but if not organized for an unlawful purpose a receiver for it can demand in equity an accounting for the debt purporting to be secured thereby. Such accounting should be with interest after allowing all payments made upon the loan.

The Supreme Court may permit a bill of foreclosure, filed to enforce void securities, to be so amended, after the hearing, as to ask for an accounting for the debt.

A borrower, after making payments to a receiver appointed for his creditor in proceedings to which he was not a party, cannot afterwards, in proceedings against himself for the enforcement of his debt, question the validity of the appointment.

Appeal from the Superior Court of Detroit. Submitted January 7. Decided April 13.

FORECLOSURE. Bill dismissed without prejudice. Reversed.

*Charles F. Burton* and *Alfred Russell* for complainant. An association can recover against an individual member on

a specific contract between them (*Townsend v. Goewey* 19 Wend. 424; *Cross v. Jackson* 5 Hill 478) especially where a mortgage has been given : *Galway v. Fullerton* 17 N. J. Eq. 389; *Baring v. Lyman* 1 Story 423; *Gridley v. Dole* 4 Comst. 492; *Jemison v. Walsh* 30 Ind. 167; and whatever the association can do its receiver can do also: *Brouwer v. Hill* 1 Sandf. 629.

*Romeyn & Romeyn* for defendant. A receiver appointed without jurisdiction cannot control the assets: *Port Huron & Gratiot Ry v. Jones* 33 Mich. 303; *Port Huron & Gratiot Ry v. St. Clair Circ. Judge* 31 Mich. 456; *Kimball v. Goodburn* 32 Mich. 10.

COOLEY, J. The Legislature of 1869 passed an act to authorize the incorporation of Building and Savings Associations, which is published as chapter 93 of the Compiled Laws of 1871. Several associations were formed under and in supposed conformity with its provisions; and among them the "Detroit Building & Savings Association No. 4," of which the defendant William Schildbach became a member. The articles of association provided for a capital stock of $250,000, divided into 2000 shares, of which no member could hold more than twenty. The shares were to be had on paying an initiation fee of ten cents, and twenty-five cents a week thereafter. The purpose of the association was declared to be to make loans to members and enable them to procure houses and places of business. Each share was to entitle the holder to a loan of $125, for which he was to give real estate security. Loans were obtained as follows: At each regular weekly meeting, whenever there were more than $125 on hand, the money was to be sold in loans of $125, and the shareholder who bid the highest premium was to receive it. Each shareholder receiving such a loan was to pay a weekly interest of fifteen cents, and also the weekly dues of twenty-five cents until the dissolution of the corporation. This dissolution was to take place as soon as every shareholder should have received on each share the sum of $125, including the premiums bid as aforesaid, and all mortgages given were then

to be discharged or returned to their respective makers. These articles, together with the constitution and by-laws of the association, are given in full in 30 Mich. 514 *et seq.*

William Schildbach became the owner of twenty shares in the association, and in May, 1873, was awarded a loan thereon of $125 on each share. , The premium bid for this appears to have been $178.50, and a bond and mortgage were given as security, which bear date June 10, 1873. The conditions of the bond are as follows:

"The conditions of this obligation are such that, whereas, the said William Schildbach is a member of said association and the owner of twenty shares of its stock, on which stock he, the said William Schildbach, on the 19th day of May, 1873, made a loan of the sum of twenty-five hundred dollars, pursuant to the provisions of the constitution and by-laws of the said association, on which sum of twenty-five hundred dollars he agrees to pay to said association interest, to wit, the sum of three dollars weekly in advance from the date hereof, on or before the Monday of each and every week during the existence of said association, and in like manner, at the same time and for the same period, to pay a weekly assessment of fifty [twenty-five] cents on each and every share of stock owned by him, and on which he has taken a loan as aforesaid, and also to pay all fines that may be legally assessed against him under and by virtue of said constitution and by-laws, or any amendments that may be made thereto; also, to keep the buildings on the premises mortgaged—to secure the conditions of this obligation—insured, during the existence of said association, against loss and damage by fire, to the acceptance of the directors of said association, in the sum of at least one thousand dollars for the benefit of said association, and pay all taxes and assessments which may be levied upon said mortgaged premises during the existence of said association, including all taxes that may be assessed on the loan or money hereby secured, and to comply with all and singular the conditions of the constitution and by-laws so far as they are binding upon him.

"Now THEREFORE, if the said William Schildbach shall promptly pay to said association said weekly dues or assessments, as aforesaid, and the interest upon the sum loaned, as aforesaid, amounting to the sum of eight (8) dollars, on or before the Monday of each and every week during the existence of said association, as aforesaid, and shall pay all fines

that may be legally assessed against him, as aforesaid, shall insure and keep insured said mortgaged premises, as aforesaid, shall pay the taxes which may be legally levied upon them, and upon the sum loaned during the life of said association, and shall comply with all and singular the conditions of said constitution and by-laws, so far as they are binding upon him, then this obligation shall be void, otherwise be and remain in full force and virtue.

"PROVIDED, That in case said William Schildbach shall be in default in paying said sum of money, or any part thereof, as aforesaid, for a period of sixty days after the same becomes due, then the whole sum of money loaned, as aforesaid, shall become immediately due and collectible, with the interest in this bond specified. This bond is given as collateral security of a certain mortgage, bearing even date herewith, and executed by the undersigned and wife."

The mortgage was conditioned for the performance of the condition of this bond.

Schildbach made the weekly payments on the bond and mortgage until December 7, 1874, and after that date made payments as follows: $50 May 6, 1875; $25 July 15, 1875, and $25 September 30, 1875. He made no payments after the date last named. The last three payments were made to Michael Martz, receiver as hereinafter mentioned.

Sometime in the year 1874 one Andrew Mok, who was also a member of the association and had given to it a similar bond and mortgage, filed his bill in the Superior Court of Detroit to have the weekly payments which he had made upon the mortgage, except so far as should be necessary to satisfy the accruing interest at the lawful rate, declared to be payments on the principal sum named in the bond and mortgage, and to have those securities decreed to be satisfied and discharged when the principal sum should be thus paid up. The Superior Court made a decree in accordance with the prayer of the bill, and the defendant appealed to this court. In this court the discussions of counsel were directed mainly to the question whether the act under which the association was organized was constitutionally sufficient for the purpose, and this court was of opinion that it was not. The reasons for the opinion are given in the reported case. *Mok v. Detroit*

*Building & Savings Association* 30 Mich. 511. The defect in the act was found to be, that it was not complete and sufficient in itself to permit of incorporations under it, and that it undertook to accomplish the purpose by reference to an indirect and blind amendment of a previous statute, whereas the Constitution requires that all amendments of statutes shall present the provisions in full as amended.

The result of this decision was that the association of persons who previously supposed they had been organized into a corporation were left unorganized, and those of their number who had previously acted as officers, had securities or intended securities in their hands made to the supposed corporation, but which now as legal securities had become worthless. Probably they had moneys and other property in their hands also, and they may have contracted debts in the name of the supposed corporation which still remained unsatisfied; but on these points we have no information. It is not probable that all the members had obtained loans, and those who had not, must have had equities which the others ought to recognize whether legally compellable to do so or not. It would be highly inequitable that the money borrowed should be retained, and the securities at the same time repudiated.

In this position of affairs, and on the 29th day of March, 1875, one Peter Geller, who was a borrower from the association of the sum of $2500 less the premium bid for the same, filed his bill in the Superior Court of Detroit against the association, its officers and all the original associated members "and other associates whose names are unknown to complainant, and whom he prays may be brought in when discovered in such manner as the court may direct;" the purpose and prayer of which was that a receiver of the property, effects and credits of the association might be appointed, and an account be taken of all assets and debts, and the assets be applied in the payment of the debts equally, and the surplus, if any, divided among the shareholders. Schildbach was not brought in or in any way made a party to this bill, but the defendants actually named appeared by counsel, and the

court on the 3d day of April, 1875, appointed Michael Martz receiver in accordance with the prayer of the bill. To this receiver Schildbach made payments to the amount of $100, as before stated. Afterwards the present complainant became receiver as successor to Martz.

The bill in the case now before us was filed to foreclose the mortgage which Schildbach and his wife gave as is above shown. It sets forth the giving of the bond and mortgage; alleges that at the time of the filing of the bill the sum of $634.38 was due, and prays for the usual decree of foreclosure and sale.

The defendants William Schildbach and wife made answer, in which they insist on the invalidity of the organization and supposed incorporation of the association; deny that either Martz or the complainant was ever legally appointed receiver, or could have been appointed receiver so far as the rights and equities of William Schildbach were concerned in a suit to which he was not a party; deny that the bond and mortgage had legal existence, but aver that Martz as pretended receiver collected a large amount of money, to a ratable portion of which the defendant William Schildbach is equitably entitled, and his share of which would more than satisfy what is claimed to be due from him on the bond and mortgage. Replication was filed to the answer and testimony taken, and on the hearing the bill was dismissed, but without prejudice to any other or further remedy. The complainant has appealed.

Neither party on the argument in this court has called in question the decision in *Mok v. Building etc., Association*, but the complainant insists that relief may be given him notwithstanding that case. It therefore becomes necessary to see what that case actually decides, and important also, to determine whether decisions heretofore made in the State upon cases more or less analogous have any important bearing.

In *Mok's Case* nothing was directly decided except that the enactment under which the association was formed had no validity. Nevertheless, as the defendant in that case was

insisting upon Mok's mortgage as a valid security for the full amount according to its terms, the court must have rendered a different decree if it had sustained this claim. On the other hand the judgment of this court must have been the same that was actually rendered if the court had reached the conclusion that the mortgage was a valid security, but that all the weekly payments made must be applied as payment. This was what Mok claimed, and this was what the Superior Court decreed in his case. And this complainant, as we understand it, is satisfied with this conclusion, and makes no objection to its being applied in this case.

The obvious difficulty in giving any remedy springs from the fact that these promises to pay had no payee. The bond and mortgage purported to be given to a certain corporation, when there was no such corporation in existence. They were, therefore, as securities, merely null and void. If this point required authority, it is to be found in *Green, receiver v. Graves* 1 Doug. (Mich.) 351, in which a receiver of a bank organized under the General Banking Law of 1837 was held incompetent to enforce at law the notes given to the bank while it was engaged in transacting business under that unconstitutional law. In the subsequent case of *Hurlbut v. Britain* 2 Doug. (Mich.) 191, the further ruling was made that a mortgage given to such a bank could not be foreclosed in equity. There seems to be no escape from these decisions : they meet the point squarely, and hold that securities given to what purports to be, but is not, a corporation, are of no validity whatever.

There is a difference, however, between the cases in Douglas and this case, which may not be wholly unimportant. The business of banking, when carried on by institutions, associations or persons not lawfully authorized, was at that time forbidden and illegal. Everything done under the General Banking Law was therefore illegal, and no equities could have arisen in favor of any of the participants in the unlawful conduct. But there is no illegality in loaning money, or in associating for the purpose, and it is possible, therefore, for equities to arise in favor of the parties to such a transaction,

when it proves not to have been conducted in strict conformity to the law. The vice of intentional disregard of the law does not taint it.

But what relief can be given if not upon the securities? In *State v. How* 1 Mich. 512, Chancellor Manning held that shareholders in a bank organized under the unconstitutional General Banking Law could not be made liable as partners upon the obligations the bank had issued. But importance was there attached—and justly, as we think—to the fact that the issue of any such obligations was forbidden by law and illegal. If it had not been illegal, possibly it might have been held that those who assumed to carry on banking business in the name of an association not empowered to do so, were personally responsible as joint promissors to those who had trusted them. *Medill v. Collier* 16 Ohio St. 599.

When persons in good faith proceed to organize what they intend shall be a corporation, contemplating a lawful business, and the organization proves ineffectual, but the money jointly contributed by the members associated finds its way into the hands of one of their number, or of some third person, it ought not to be in the power of such person to retain what he has thus received, and to refuse to account to those who were equitably entitled. There is an injustice in such conduct which equity ought to be able to correct. If the money has been obtained in good faith, in the mistaken belief that a corporation existed, it ought not to be retained when the mistake is discovered, and the corporators, who cannot sue at law, ought to be at liberty to come into equity for an accounting. We know of no principle of equity that would be violated by giving such redress; and on the other hand there is ground for the argument that it would be entirely competent for the Legislature retrospectively to affirm and validate the promise to repay, so that a suit at law in the name of the association might be brought upon it. *Lewis v. McElwain* 16 Ohio 347; *Savings Bank v. Allen* 28 Conn. 97; *Parmelee v. Lawrence* 48 Ill. 331; *Danville v. Pace* 25 Grat. 1; *Thompson v. Morgan* 6 Minn. 292. But that point is not before us, and is not decided.

One difficulty in this case, which is very serious, is that it was not contemplated the loans to this association should ever be repaid. Weekly payments were to be made until every member had had a loan corresponding to the number of his shares, and the corporation was then to be dissolved and the securities cancelled. The nominal purpose of the organization was to enable members, by a small weekly payment, to obtain a considerable sum of money; and the securities were only to be enforced against them in case the weekly payments were not kept up. The weakness of the system lay in the fact that the weekly payments must pay the expenses of management; and *Mok's Case* is evidence that these were found very burdensome. But if a borrower is disposed to abide by his contract, it cannot be in the power of the court, or even of the Legislature, to make a new contract for him. He does all that can be required of him if he abides by its terms. The difficulty here is that by the association ceasing to do business, it has become altogether impossible that the terms of the contract shall be kept by either party. Schildbach was to continue to keep up his weekly payments until sufficient had been realized to make proportionate loans to all the members, and was then to be released from all obligation. But as soon as it became impossible to make further loans, there was nothing to limit the time that Schildbach should continue to pay, if he were disposed to perform his contract according to its terms. From that time any remedy that should be open, either to him or to the associates against him must be, to some extent at least, independent of the contract.

The position, then, of these associates is this: They have all put moneys—some more and some less—into a common fund. Some of them have received from this common fund considerable sums of money, and others probably nothing, though equally entitled. Equity requires that there should be an adjustment between all the parties on a fair accounting, and that those who have received moneys on an understanding with their associates which cannot possibly be carried into effect, should return them for the purposes of a fair division. And the return should be with interest after allow-

ing all payments heretofore made. But no decree can be made against any one of the associates based upon the securities, for these are wholly void in law. The decree can take notice of the money loaned only, and can establish no lien on land where the parties have created none.

It has been already stated that the bill in this case is a bill of foreclosure. It is not properly framed, therefore, to entitle the complainant to such relief as is available. It shows no debts owing by the association, and it fails to show that as between Schildbach and the other associates he has not returned all that can equitably be required of him. But the bill may be easily amended in these particulars, and no good reason is apparent why an amendment should not be allowed now, if the complainant elects to make it, instead of beginning *de novo*.

It is objected that the receiver was not legally appointed because Schildbach was not made a party to Geller's bill. But Schildbach has recognized the receivership by his subsequent payments, and he should not be heard to question the appointment in this collateral way.

The decree appealed from must be reversed and an order entered in this court in accordance with the views above expressed. The complainant in entering the order will elect whether he will dismiss his bill or amend, and the matter of costs will be then determined.

The other Justices concurred.