## Building and Loan Association of Dakota v. Chamberlain.

1.  A party who has contracted with a corporation *de facto* as such, cannot be permitted after receiving the benefits of his contract, to allege any defects in the organization of such corporation affecting its capacity to enforce such contract; but all such objections, if valid, are available only on behalf of the sovereign power of the state.

2.  Stockholders who subscribe for stock, or assist in organizing a corporation under a charter, and reap the benefits of the law, and thereby induce persons to credit the corporation, and do business with it on the faith of its being legally organized, will be estopped from alleging that the law under which the corporation is organized is unconstitutional, as a means of avoiding any personal liability by reason of these transactions or contracts with such corporation.

(Syllabus by the Court.    Opinion filed Nov. 24, 1893.)

Appeal from circuit court, Potter county.    Hon. H. G. Fuller, Judge.

Action by the Building and Loan Association of Dakota against Albert E. Chamberlain, Kate V. Chamberlain and J. R. Hughes. .From a judgment overruling his demurrer to the complaint, defendant Albert E. Chamberlain appeals.    Affirmed.

The facts are stated in the opinion.

*A. E. Chamberlain* and *Walter C. Fawcett*, for appellant.

The legislature of the territory of Dakota had no power to pass the act of March 13, 1885, and the act amendatory thereto

of March 11, 1887, relating to building and loan associations. The legislature had only such powers and authority to legislate only upon such subjects as congress conferred upon it.   Sec. 3 Art. 4, Const. U. S.; Reynolds v. United States, 98 U. S. 8 Otto 145; Bank v. Yankton Co., 101 U. S. 129; Ins: Co. v. Canter, 1 Pet. 511; Dred Scott v. Sanford, 19 How. 393; Kent's Com. Vol. 1, p. 421; Story on Const. Vol. 2, Sec. 1328; Sec. 1851 Rev. Stat. U. S.; § 1889 Rev. Stat. U. S.

The provisions of § 1889, Rev. Stat. U. S. negatives the power of the legislature to permit the forming of corporations for any other than the purposes therein named, and expressly prohibited the granting of any private charters.   The charter of the plaintiff certainly conflicted with the law relating to private charters.   It granted to associations of that class dangerous special privileges and power to evade the usury laws of the territory.    Treadway v. Schnauber, 1 Dak. 256; Morawetz Priv. Corp. Vol. 2, § 758; Cooley's Const. Lim. p. 224, § 188; Cowell v. Colorado Springs Co., 100 U. S. 10 Otto 55; Wells, Fargo & Co. v. Railway Co., 23 Fed. Rep. 474; Wally's Heirs v. Kennedy, 2 Yerg. 554; Story's Const. Lim. p. 480; Gordon v. Building & Loan Association, 12 Bush 110.

The plaintiff therefore being formed under a law which the territory had no power to pass and which was unconstitutional, had no legal existence or capacity to sue and cannot recover. State v. How et al., 1 Mich. 110; Hurlburt v. Britain, 2 Mich. 191; Mok v. Detroit Building and Savings Association, 30 Mich. 511.

C. E. Reed and Taubman & Potter, for respondent.

The legislature of the territory of Dakota had the power to enact the law of March 13, 1885, under which plaintiff claims its corporate existence.   Sec. 1851, U. S. Rev. Stat.; § 1889, Rev. Stat.; § 5, Ordinance 1787; Williams v. Bank of Mich., 7 Wend. 540; Trustees Vincennes University v. Ind., 14 How. 270; Act of Cong. June 10, 1872; Stebbins v. Board of Co. Com., 4 Fed. R. 282; U. S. v. LeBris, 7 S. C. R. 894; Ex parté Crow

Dog, 109 U. S. 556, Railroad Co. v. Railroad, 53 Pa. St. 20; Suth. Stat. Con. § 307; Railroad Co. v. Martin, 7 D. C. 120; § 1, Act of 1867; Carver Mercantile Co. v. Hulme, 19 Pac. 213; *In re* Long Island Transportation Co., 5 Fed. R. 626; U. S. v. Sanche 7 Fed. R. 718; Campbell v. James, 3 Fed. 516; Endlich on Building Societies, pp. 13 to 107.

The term "industrial pursuit" in Sec. 1889, Rev. Stat. U. S. furnishes authority for corporations of the character of this plaintiff.   Suth. Stat. Con. 268 to 282; Wells, Fargo Co. v. Railroad Co., 23 Fed. R. 469; Wells v. Railway Co., 15 Fed. R. 567; Endlich B. & L. Assns., 1 to 13; Payne Build. & L. Assns. 1 to 16.

The law incorporating the plaintiff is a general law relating to all corporations of the class to which plaintiff belongs, and is not special in its nature, nor does it grant a special privilege.   Suth. Stat. Con. 121; Wheeler v. Philidelphia, 77 Pa. St. 338; People v. Henshaw, 76 Cal. 436; Pritchett v. Stanislaus, 73 Cal. 310; Cass v. Dillon, 2 O. St. 607; Kelly v. State, 6 O. St. 269; French v. Teschemaker, 24 Cal. 544; Suth. Stat. Con. 122 to 127.

The contract between building and loan associations and borrowing stock holders is not usurious in its nature.   Citizens Mut. L. Assn. v. Webster, 25 Barb. 263; Massey v. Citizens B. & L. Assn., 22 Kan. 637; Robertson v. Am. H. Assn., 10 Mary 397; Union B. & L. Assn. v. Masonic Hall Assn., 29 N. J. Eq. 389; Clarksville B. & L. Assn. v. Stephens, 26 N. J. Eq. 351; Franklin B. Assn. v. Marsh, 29 N. J. 225; Hoboken B. Assn. v. Martin, 13 N. J. Eq. 428; Watkins v. Workingmans B. & L. Assn., 97 Pa. St. 514; Beckett v. Uniontown B. Assn., 88 Pa, St. 216; Junita B. & L. Assn. v. Mixell, 84 Pa. St. 313; Pattison v. Albany B. & L. Assn., 63 Ga. 373; Winget v. Quincy B, & H. Assn., 128 Ill. 67; Holmes v. Smythe, 100 Ill. 413.

The defendant having received from plaintiff a loan of money and contracted to repay it, and being a stockholder is

estopped to deny the corporate capacity of plaintiff to enforce the contract.   Winget v. Quincy B. & H. Assn., 128 Ill. 67; Freeland v. Ins. Co., 94 Pa. St. 504; McCarthy v. Lavasche 89 Ill. 270; Dows v. Naper, 91 Ill. 44; 2 Mor. Pri. Cor. § 759; St. Louis v. Shield, 62 Mo. 247; Smith v. Sheeley, 12 Wall. 358; Fresno Canal & Irrigation Co. v. Warner, 14 Pac. 37; Close v. Glenwood Cemetery, 107 U. S. 466; Railroad Co. v. Ry. & Nav. Co., 23 Fed. R. 232; St. Paul Land Co. v. Dayton, 40 N. W. 66. Wentz, Admr. v. Lowe, 3 Atl. 878; Wright v. Lee, 51 N. W. 706, S. D.; Lheman v. Warner, 61 Ala. 455; St. Louis Assn. v. Hennessy, 11 Mo. App. 555; Slocum v. Prov. G. P. Co., 10 R. I. 112;   McHose v. Wheeler, 45 Pa. St. 32; Swartout v. Railroad Co., 24 Mich. 389; Cong. Society v. Perry, 6 N. W. 164; Hamtramck v. Bank, 2 Mo. 69; Camp v. Bryne, 41 Mo. 525; Jones v. Railroad Co., 14 Ind. 89; Railroad Co. v. Evansville, 15 Ind. 395; State v. Bailey, 16 Ind. 46; Brownlee v. Railroad Co., 18 Ind. 68.

Bennett, P. J.   This was an action brought by the respondent in the court below upon a contract for the payment of money, executed by the defendant, Albert E. Chamberlain, and to foreclose a mortgage upon real estate, which was given by him to secure the payment of said money.

The Building and Loan Association of Dakota is a corporation organized under the provisions of "An act to provide for the incorporation and regulation of building and loan associations," passed by the territorial legislature of Dakota, and approved March 13, 1885, and an act amendatory thereof, approved March 11, 1887.   Said act, after prescribing the mode in which corporations may be organized as therein specified, provided, among other things, not material here:   "Sec. 4. The money in the treasury, if equal to the amount of one share of stock in the association, shall be offered for loan in open meeting, and the stockholder who shall bid the highest premium for the preference or priority of loan shall be entitled

to receive a loan for the full amount of each share of stock held by such stockholder; provided that good and ample security shall be given by the borrower to secure the repayment of the loan. Sec. 5. A borrower may repay a loan at any time by the payment to the corporation of the principal sum borrowed together with interest, * * * not to exceed twelve per cent per annum; together with such per cent of premium per annum as may have been bid for the preference or priority of such loan. Or in case the amount of premium bid for the priority of such loan shall be deducted in advance and the repayment thereof is made before the expiration of the eight years after the organization of the corporation, there shall be refunded to such borrower one-eighth of the premium paid for every year of said eight years unexpired; provided that when the stock is issued in separate series, the * * * time shall be computed from the date of the issuing of its shares of stock on which the loan is made. Sec. 6. No premium, fine or interest on such premiums that may accrue to the said corporation according to the provisions of this act shall be deemed usurious; and the same may be collected in this territory."

On the 1st day of March, 1889, the defendant, Albert E. Chamberlain was a member of said association, and the owner and holder of 16 shares of stock of said association; said stock being issued in separate series; 10 shares being dated March 1, 1889. On that day the plaintiff made a loan of $1,600 to said defendant Albert E. Chamberlain, the whole amount of premium bid therefor being deducted in advance, and for which defendant Albert E. Chamberlain, on March 1, 1889, made, executed and delivered to the said plaintiff his promissory note, in writing, and said note so executed and delivered is in words and figures following, towit: "$1,600.00. Aberdeen, Dakota, March 1st, 1889. For value received, after three years from date, and before nine years from date, I promise to pay to the order of the Building and Loan Association of Dakota, at its home office, in Aberdeen, Dakota, the sum of sixteen hundred

dollars, with interest at the rate of six per cent per annum on the sum of seven hundred eighty four dollars, payable monthly in advance.   It is understood that this note is given for a loan obtained on sixteen shares of stock of said Building and Loan Association of Dakota, and if the maker hereof fails to make any monthly payment on said stock, or to pay any installment of interest for a period of six months after the same is due, then the whole amount of this note shall become due and payable at once.   But if the maker hereof shall pay all installments of interest which become due hereon, and all fines and monthly payments which become due on said stock, until said stock becomes fully paid in, and of the value of $100 per share, and before any of said installments of interest or monthly payments shall have been past due for a period of six months, then, upon the surrender of said stock to said association, this note shall be deemed to be fully paid, and canceled.   This note is understood to be made with reference to, and under the laws of, the territory of Dakota. . All payments hereon payable at the office of the association in Aberdeen, Dakota.   Albert E. Chamberlain. [Margin:] If this note is paid before eight years from date, there shall be allowed such rebate from the amount of the premium as the board of directors of said association shall deem equitable.   Premium, $816.00; loan, $1,600.00."

To secure the payment of said note, interest thereon, and loan, and also to secure the payment of the monthly dues upon said stock, the fines for failure to pay said monthly dues, and the fines for failure to pay the interest payments when due, the said defendant Albert E. Chamberlain did, on the 1st day of March, 1889, execute and deliver to the plaintiff a mortgage deed, and thereby convey to the plaintiff certain real property, which was described therein, which mortgage deed "provided further, in case of default in the payment of the principal, when due, or of interest, or of any part thereof, or if the taxes or premiums on insurance on the property hereby mortgaged be due and unpaid for the space of six months, or should said

sixteen shares of stock, as above recited and mentioned, or any part thereof, be sold or forfeited for the nonpayment of dues, fines or penalties, as provided in the by-laws of said second party, then, and in either of said cases, the whole principal debt aforesaid shall immediately become due, payable, and recoverable, and the said party of the first part, in such case, does hereby authorize and empower the said party of the second part, its successor or assigns, to sell the hereby granted premises at public auction or otherwise, and convey the same to the purchaser in fee simple, agreeable to the statute in such case made and provided, or which may hereafter be in force, and, out of the moneys arising from such sale, to retain the principal and interest, as well as any fines or penalties which shall then be due on said obligation, and as provided by the by-laws of said association, together with all the costs and charges of foreclosure.   *   *   *"

The by-laws of said association in force at the time of the contract provide that "any member who shall neglect or refuse to pay his or her monthly dues of sixty cents per share on the day the same shall become due, shall pay a fine of ten cents per share upon each share of stock, payable monthly, for every month a monthly payment shall be allowed to run past due." "For each day an interest payment shall be allowed to run unpaid after it becomes due, there shall be the sum of five cents per day paid the association upon each one hundred dollars of loan for which such interest payment is contracted."

The defendant Albert E. Chamberlain did not pay the installments due on the 16 shares of stock for several months in 1890 and 1891, nor did he pay the interest due on the note secured by the mortgage, and by reason of said default the entire principal sum and interest became due; also a fine of ten cents per share for each month in which a default was had, and a penalty of five cents per day on each $100 for the time of the continuation of the default, became due and payable as provided by the by-laws of said association.   For these various

sums the plaintiff asks judgment, and sale of the 16 shares of the stock, and for a foreclosure of the mortgage given to secure them.

To the complaint of the respondent, the defendant Albert E. Chamberlain demurred upon the following grounds: (1) That the complaint does not state facts sufficient to constitute a cause of action; (2) that the plaintiff has not capacity to sue; —which demurrer was overruled, and from this order an appeal was duly taken and perfected.

The only ground, in this appeal, upon which the defendant Albert E. Chamberlain seeks to be released from the obligations created by the contract and mortgage executed by himself and wife, is that the plaintiff has no valid existence, and is therefore incapable of maintaining an action to enforce this or any other contract. In support of this contention, he insists that the acts of the territorial legislature of 1885 and 1887, under which said association was organized, were enacted without authority, and are unconstitutional and void. On this point it is sufficient to say that whatever may be the fact in relation to the valid legal existence of said association, as a corporation, the defendant Chamberlain is not in a position to challenge its validity. The complaint shows that he was a stockholder in it, and, as such, he contracted with in, borrowing and receiving money of it, and endeavored to, and did receive benefits from it, under the rules and regulations, it is presumed, he helped to make. The rule is well established that a party who has contracted with a corporation *de facto*, as such, cannot be permitted, after receiving the benefits of his contract, to allege any defects in the organization of such corporation, effecting its capacity to enforce such contract; but all such objections, if valid, are available only on behalf of the sovereign power of the state. On this proposition see 2 Mor. Corp. § 750, and authorities cited in note. This rule applies, also, where the corporation is organized under a law alleged to be unconstitutional. 2 Mor. Corp. § 759; Freeland v. Insurance Co., 94 Pa. St. 504;

McCarthy v. Lavasche, 89 Ill. 270; Dows v. Naper, 91 Ill. 44; St. Louis v. Shields, 62 Mo. 247; Wright v. Lee, (S. D.) 51 N. W. Rep. 706; Wentz v. Lowe, (Pa. Sup.) 3 Atl. Rep. 878; Smith v. Sheeley, 12 Wall. 358; Irrigation Co. v. Warner, (Cal.) 14 Pac. Rep. 37. It is true that a corporation formed in violation of a prohibition of the organic law of a territory, or the constitution of a state, like a corporation formed in violation of a prohibitory act of the legislature, will not, as a rule, be recognized by the courts, for the purpose of suing and enforcing rights founded on such illegal incorporation. There is, however, a difference between a constitutional prohibition designed to prevent the formation of corporations of a certain class, or for certain purposes, and a provision whose sole object is to limit the power of the legislature to pass general or special incorporation laws. An act of incorporation passed by the legislature in violation of a provision of the latter description would undoubtedly be void, and no right or authority could be derived from it; but, if persons could actually form a corporation under the provisions of such void act, they would not thereby violate the constitutional prohibition. Morawetz in his Law of Private Corporations, (Section 759) says: "The formation of the corporation, under these circumstances, would merely be contrary to the general common law prohibition, as in any other case where a corporation is formed without the consent of the sovereign. The legal status of a corporation formed under an unconstitutional law, as that of a corporation formed under no law at all, or without complying with such laws as may exist, both with regard to the rights and obligations of its members, and the rights and obligations of the corporation in respect to parties dealing with it, should therefore be the same." Accordingly, it was held by the supreme court of Pennsylvania, in an action brought by a mutual insurance company against a policy holder, that the defendant could not, after acting as a share holder, avoid his agreement on the ground that the corporation was incorporated under an unconstitutional

law.   Freeland v. Insurance Co., 94 Pa. St. 504.   See, also, McClinch v. Sturgis, 72 Me. 288.

The case of McCarthy v. Lavasche, 89 Ill. 270, was a suit brought by a creditor of a corporation to enforce the individual liability of a shareholder for double the amount of his shares. The defense was interposed that the act of the legislature under which the corporation was formed was unconstitutional.   The supreme ·court, however, held that the defendant was liable. Justice Walker, in delivering the opinion of the court, said: "It is urged that the corporation was never legally organized, as the act under which the stockholders incorporated was unconstitutional and void; that if not, then the clause in the charter rendering stockholders liable is too vague to render them liable to the individual creditors of the company; or, if it shall be held that they are so liable, then the remedy is in equity, against all the stockholders.   On the other hand it is contended that the law does not contravene the constiوution; but if it should be so held, the stockholders having organized the corporation, and held themselves out to the world as such, and thereby obtained credit and incurred indebtedness, they are estopped to deny the validity of the act, or their organization under it; and that a reasonable and fair construction of the clause of the act quoted renders the shareholders individually liable to each and every creditor, and that the remedy for a recovery on the liability is complete at law.   These are the questions raised and discussed on this record.   Even if the law is unconstitutional, can the promotors and those engaged in its operation, be heard to say that they may relieve themselves from liability, and from all their engagements, because the law under which they have acted is prohibited by the organic law?   May shrewd, intelligent persons go to the general assembly and procure an act that they should know is prohibited by the fundamental law, avail themselves of its benefits, obtain the money of the uninformed and the confiding, and then be heard to say, we are not incorporated; our charter and organization are void, and

we will hold your money?  Or may those who promoted the enterprise, by becoming shareholder, to enable the company to organize, and to procure other people's money, be heard to interpose such a defense?  The presumption is that each subscriber for stock knew at the time of subscription that the charter contained the provision rendering him liable for double the sum he subscribed; and such persons could not but have known that this provision would contribute largely to give credit to the concern, and greatly augment its business.  The subscribers for shares of the stock, no doubt, expected to reap large profits and expected these profits to be greatly enhanced by this provision.  It enabled them to point to it and assure individuals and the public that the institution was safe, as, if the business was not lucrative, all the stockholders were severally liable for double the amount of their subscriptions.  They thus, no doubt, did increase their business, and thus obtained money credit, which now, when the institution has proved a failure, they endeavor to avoid paying by urging that their organization, and, consequently, their subscriptions to its stock, were void.  Fair dealing would say that they should be estopped from interposing such a defense.  * * *  Here, appellant approved of the act, and availed himself of its benefits by subscribing for stock and becoming entitled to exercise all the rights and privileges of a stockholder in the corporation.  Justice, morality, public policy, and precedent all demand that appellant should be estopped from denying the constitutionality of the law.

If stockholders might show the law unconstitutional, and their organization void, and all their acts unauthorized, then all persons engaged in the organization of the corporation should be held liable for the consequences of their illegal and unauthorized acts, independent of the clause in their charter.  So they should, in no event, escape liability for obtaining money without authority.''

The rule in Michigan appears to be different, and, when a

corporation is organized under a void act of the legislature, the courts will not recognize the corporation for the purpose of enforcing a contract made by or with it. The cases which have been decided by the supreme court of that state in which the question arose viz.: State v. How, 1 Mich. 512; Green v. Graves, 1 Doug. (Mich.) 351; Hurlbut v. Brittain, 2 Doug. (Mich.) 191; Burton v. Schildbach, 45 Mich. 504, 8 N. W. Rep. 497; Mok v. Association, 30 Mich. 511,—were cases where the corporations appeaced to have been formed for illegal purposes, namely, to violate laws against unauthorized banking, as well as without constitutional legislative authority. But that court seems to have receded somewhat from this position in the later case of Manufacturing Co. v. Runnells, (Mich.) reported in 20 N. W. Rep. 823. This was an action to recover the possession of certain real estate. Upon the trial of the case, the plaintiff offered in evidence a sheriff's certificate of sale of the real estate, made by virtue of an execution issued upon a judgment rendered in favor of the plaintiff corporation. To the introtion of this, the defendant objected for the reason that the grantee named in the certificate is a corporation, and cannot hold real estate by its articles of corporation, or under the laws of that state. The circuit court trying the case overruled the objection. Upon appeal the supreme court says: "In this case the defendant introduced in evidence the execution upon which the sale was made. From this appears that it was issued upon a judgment rendered for damages for the nonperformance of certain promises and undertakings made by the defendant to the Estey Manufacturing Company, which shows that the defendant had had dealings with the plaintiff as a corporation, in the name it assumed. It was therefore estopped, not only by having dealt with it as a corporation, but by the judgment in the case, to deny its corporate existence."

So far as this question arises in our jurisdiction, it is well settled by Section 2892 of the Compiled Laws, which is as follows: "The due incorporation of any company, claiming in

good faith to be a corporation under this chapter and doing business as such, or its right to exercise corporate powers shall not be inquired into collaterally, in any private suit to which such *de facto* corporation may be a party; but such inquiry may be had and action brought, at the suit of the territory, in the manner described in the Code of Civil Procedure."

This seems, therefore, to be the well-established doctrine throughout American jurisprudence. Any other doctrine would be contrary to the plainest principles of reason and good faith, and involves a mockery of justice. Parties must take the consequences of the position they assume. They are estopped to deny the reality of the state of things which they have helped to make appear to exist, and upon which others have relied. Therefore, we are of the opinion that the court below committed no errer in overruling the demurrer upon this ground, and the order of the court below is affirmed. All the judges concur.