CUNNINGHAM v. CITY OF CLEVELAND.[1]

(Circuit Court of Appeals, Sixth Circuit. December 4, 1899.)

No. 693.

**1. EQUITY JURISDICTION—SUIT TO WIND UP INSOLVENT CORPORATION—ANCILLARY PROCEEDINGS.**

A court of equity, which has taken possession of the property and assets of an insolvent corporation in a suit to wind up its affairs, may authorize its receiver to bring in, by ancillary bill, a debtor of the corporation, for the purpose of ascertaining and enforcing payment of such indebtedness; and its jurisdiction to determine the questions involved in such ancillary proceeding is conferred by the original bill, and is not affected by the fact that such questions are of a legal nature.[2]

**2. RES JUDICATA—DECREE DISMISSING BILL WITHOUT PREJUDICE.**

A decree dismissing a bill filed by a corporation without prejudice, and based on the ground that the evidence failed to show that the complainant was authorized to maintain the suit, does not constitute a bar to a second suit on the same cause of action by the corporation or its receiver, when due authority is shown.

**3. MUNICIPAL CORPORATIONS—GRANT OF FRANCHISES—MONOPOLIES.**

An ordinance granting a franchise for the construction and maintenance in a city of water and electric light plants for a term of years, and by which the city contracts to pay rental for a certain number of fire hydrants and lights during the term, is not the grant of an exclusive privilege, and does not prevent the city from granting similar franchises to others or making similar contracts with them.

**4. SAME—POWER TO CONTRACT.**

Under an amendment to the charter of a city authorizing it to provide for lighting the streets, and for supplying itself and its inhabitants with water, by contract or otherwise, and to grant franchises for a term of years to water or lighting companies, the mayor and council may, by an ordinance granting a franchise or entering into a contract, bind the city during the term of such franchise or contract.

**5. SAME—CONTRACT FOR WATER SUPPLY—DEFENSES AGAINST PAYMENT.**

Statutory provisions requiring the consent of a city to authorize the formation of a corporation to exercise a franchise as a water company, and the appointment and report of inspectors concerning the source of the proposed water supply, are for the protection of the city, and when they have been substantially, though not technically, complied with, and the company has been formed, and has proceeded, with the full assent of the city authorities, to erect its plant and furnish the city with water, in accordance with the contract embodied in its franchise, the city is estopped to defend against payment therefor on the ground of informality in compliance with such requirements.

**6. SAME—CONSTRUCTION OF CONTRACT—LIMIT OF INDEBTEDNESS.**

A contract by which a city agrees to pay an annual rental during a term of years for water and electric lights, to be furnished by a company, does not create an indebtedness for the aggregate amount of such rentals, so as to render it invalid, under a statute forbidding the contracting of an indebtedness in such an amount without a vote of the electors.

---

[1] Rehearing denied February 13, 1900.

[2] For supplementary and ancillary proceedings and relief, see note to Toledo, St. L. & K. C. R. Co. v. Continental Trust Co., 36 C. C. A. 195.

**7. SAME—ACTION TO RECOVER RENTS—DEFENSES.**

A city granted to certain persons franchises for electric light and water purposes for a term of years, and also contracted with them to supply light and water for municipal purposes. Such persons undertook to form a corporation, of which they were sole incorporators, to construct and operate both the light and power plants, and assigned to it the franchises and contracts. The company borrowed money for the purpose, to secure which it mortgaged its plants, franchises, and contracts. The mortgagee subsequently filed a bill for foreclosure, which was also made a creditors' bill, and, a question having arisen as to the legality of the incorporation, it made the individual incorporators defendants, and they answered, admitting the averments of the bill, and disclaiming any interest in the property adverse to that of complainant. A receiver was appointed, who, by leave of court, filed an ancillary bill against the city to recover rentals due under the contracts for light and water. *Held* that, conceding the company to be without corporate existence either de jure or de facto, such fact constituted no defense on behalf of the city, as in that case the contracts remained the property of the original grantees, whose rights therein, under the pleadings in the original cause, were represented by the receiver.

Appeal from the Circuit Court of the United States for the Eastern District of Tennessee.

This is an appeal of R. J. Cunningham, receiver of the Cleveland Water & Electric Light Company, from a decree of the circuit court for the Eastern district of Tennessee, dismissing his ancillary bill against the city of Cleveland, Tenn. The litigation was begun in the court below by the National Waterworks & Construction Company, which filed a bill against the Cleveland Water & Electric Light Company and W. W. Cunningham and four other individual defendants, to foreclose a mortgage held by complainant upon all the real property, plant, and franchises of the defendant company, securing an indebtedness of $47,000. The lien of the mortgage specifically covered two contracts with the city of Cleveland, one conferring upon W. W. Cunningham and his associates the right to construct, maintain, and operate waterworks in the city of Cleveland for 20 years, and to receive rentals therefor, and the other conferring upon the same persons a similar franchise to construct, maintain, and operate an electric light plant. The bill averred that the grantees of these two franchises had organized a corporation, under the laws of Tennessee, known as the Cleveland Water & Electric Light Company, and had assigned the franchises to it; that though the waterworks and electric light plant had been erected by this company, and had been operated, and the city had received the benefit thereof, it had refused to pay its stipulated rentals, on the ground that the company was not duly incorporated; that, however this might be, complainant had dealt with the company as a corporation, and had lent it money as such, with the express understanding that it should receive a mortgage on its property and these municipal contracts; that the loan and the mortgage had been made by the company with the knowledge and assent of W. W. Cunningham and his associates, and that they were made parties in order that the lien upon the contracts might be declared, not only against the company, but also against the original grantees of the municipal contracts, the sole incorporators of the company. The bill averred the insolvency of the defendant company, and represented that unless the works were continuously operated the franchises would be lost. The complainant prayed a foreclosure of the mortgage, and a sale of all the interest of the defendant company and of Cunningham and his associates in the works, plant, and franchises described in the bill. There was a further prayer for the appointment of a receiver who should take charge of and operate the works, collect the rents, and, after paying the expenses of operation, hold the surplus to apply on complainant's indebtedness. Cunningham and his associates filed an answer to the bill, admitting all its averments, and disclaiming any interest in the two municipal contracts. The defendant the Cleveland Water & Electric Light Company also answered, admitting the averments of the bill, and consenting to a decree of foreclosure. Subsequently the complainant was permitted to amend

its bill by adding averments giving it the character of a creditors' bill as well as that of a pure foreclosure bill.

Shortly after the filing of the bill, R. J. Cunningham was appointed receiver of all and singular the property of the Cleveland Water & Electric Light Company, of every description, including operating contracts, and was directed to take possession thereof, to continue the business of the company, and to institute all such suits as he might deem necessary to collect its assets. The receiver accordingly, and by leave of court in the main action, filed an ancillary bill against the city of Cleveland to collect the rentals due from it to the Cleveland Water & Electric Light Company for public hydrants and public lights, under the water and light contracts, respectively. The bill attached as exhibits the two contracts embodied in duly-enacted ordinances accepted by the grantees. It averred the assignment of the contracts to the company organized by the grantees of the franchises as sole incorporators; the erection of the works in accordance with the contracts, and the furnishing of the hydrants and lights thereunder to the city, and the complete fulfillment of the conditions by the grantees to be performed; the failure of the city to pay the rentals stipulated to be paid; and its repudiation of the contract, as excessive and void, by the passage of an ordinance repealing so much of the contracting ordinances as provided that the city should pay so much rental per year for public hydrants, and so much compensation for public lights. The bill further averred that for one year the city, through its board of mayor and aldermen, levied a tax to provide for the payment of what was due from it under the contracts, but only devoted a part thereof to the payment of the amount due for light to the company. The amount due per year under the water contract was $2,200, and under the light contract was $1,728, and the total amount due at the filing of the bill was $8,319, for which a decree was asked against the city.

To this bill the city pleaded in bar that there never was such a corporation as the Cleveland Water & Electric Light Company; that it never had corporate existence or power to maintain a suit; and that the complainant, as receiver thereof, could not possess, and could not assert, any rights which the alleged company did not possess. Without waiving the plea, the defendant answered, averring: That the alleged company had brought a suit against the answering defendant in the chancery court of Bradley county, Tenn., whereby it sought a decree on the same cause of action. That therein the defendant pleaded that it had no corporate existence—First, because the signatures of its pretended corporators had not been properly acknowledged; second, because the certificate of the secretary of state, that the charter had been registered in his office, had not been registered in Bradley county, where its main business was to be conducted, as required by law; and, third, because the powers and franchises attempted to be granted by said charter were not authorized by the laws of Tennessee, and said charter was not in form prescribed by any general law of the state. That, after proof taken, a decree was passed dismissing the bill. That an appeal was taken to the court of chancery appeals of Tennessee, and the decree was affirmed on the grounds—First, that complainant was not a corporation; and, second, that no assignment of the contracts with the city to the complainant company was alleged or shown. That, on appeal to the supreme court, the decree was affirmed, as shown by filed opinion, (1) because complainant failed, in both pleading and proof, to show itself entitled to contracts of Cunningham and associates; (2) because complainant's charter was void for at least two reasons, namely, (a) it was not properly acknowledged; (b) was not properly registered. Whether the charter was void also, because amalgamating the functions of a water company and of an electric light company, was reserved, and not decided. In the supreme court the bill was decreed to be dismissed. Subsequently this order was amended "so far as to show that the bill is dismissed without prejudice." This decree was averred by the answer of the defendant herein to be a conclusive former adjudication upon the complainant receiver's cause of action, and to require a dismissal of his bill. As a third defense, the answer averred that no permission was given by the city to the alleged company to become incorporated for the purpose of exercising the functions of a water company, as required by law; and, further, that no inspectors were appointed, as required by

law, before a company should be granted a water franchise, to file a report concerning the sources of water supply; that these were conditions precedent to the due incorporation of water company; and therefore that the alleged company had no corporate existence. As another defense, the answer averred that the mortgage foreclosure suit was a collusive suit, to enable this bill to be filed; that the real party taking the franchises, and building the plants and operating the same, was the National Waterworks & Construction Company, a corporation of West Virginia;· that it had not filed its charter in the office of the secretary of state· of Tennessee, or recorded an abstract thereof in Bradley county, and was not authorized to do business in Tennessee, but was expressly forbidden by law to do so; and that, therefore, the contracts were void. The answer further denied that the ordinances were legally passed, and· averred that the board of mayor and aldermen had no power to bind the city by contracts for water and lighting beyond the term of said board; that the limit of annual taxation in defendant city was 75 cents on $100 of property, and that this would not permit it to pay the amounts annually due on the contracts; that the total indebtedness attempted to be imposed by such contracts was more than $100,000; and that this could not be done under the law, except by a vote of the people, which had never been taken.

By replication, the cause was brought to an issue, and proofs were taken. It appeared from the evidence that the ordinances were duly passed by the mayor and board of aldermen. The assignment of the contracts by Cunningham and his associates to the new company was produced in evidence. The charter of the company was properly registered on February 17, 1897, long before the filing of this bill. It also appeared that the charter was duly acknowledged, and the acknowledgment duly recorded. This last was in conflict with the evidence upon the same point in the state court. The evidence showed satisfactorily that the requirements of the contracts had been fully performed by the company, and that the amounts claimed in the bill had been fully earned under the contract. Inspectors were not appointed to report upon the water supply, but the members of the board requested that the water be taken from a certain spring, if pure. The water was analyzed, and found to be pure. The water was taken from this spring. The recorder of the city of Cleveland, after getting the consent of the members of. the board of mayor and aldermen, certified that leave had been granted to the new company to operate under its charter, although no formal meeting was had or resolution passed.

Frank Spurlock, for appellant.

J. B. Sizer, for appellee.

Before TAFT and LURTON, Circuit Judges, and THOMPSON, District Judge.

TAFT, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

Appellee seeks to sustain the decree, first, on the ground made below by demurrer, that there was no equity in the bill, for the reason that there was a full and adequate remedy at law. The objection to the jurisdiction in equity must fail. This is an ancillary bill, filed for the purpose of collecting the assets of an insolvent debtor whose property was being subjected to the payment of a mortgage and of its general debts. The jurisdiction in equity of the main bill supports that of the ancillary bill. The same question arose in Peck v. Elliott, 24 C. C. A. 425, 79 Fed. 10, in which Judge Lurton delivered the opinion of the court. He said:

"The fact that the circuit court had possession of all the assets of the Southern Malleable Iron Company, for the purpose of winding up its affairs as an insolvent corporation, is the fact which made it admissible to bring a debtor of that corporation into the court, to the end that his debt might be ascertained

and payment coerced. For the purpose of collecting in choses in action, the court might direct its receivers to institute independent suits in that or courts of the state, or cause such debtors to be made defendants in the principal cause, and determine for itself any question which might be involved by the defenses to the claim. Such a proceeding would not involve any question of citizenship, or amount in controversy, or mode of trial. The complete jurisdiction of the court over the res—the property and assets of this corporation—involved its right to bring before it persons having possession of any of those assets, or having claims thereon, or who were indebted to it, and either itself hear and determine all controversies, or refer them to a master or to a jury, as it saw fit. A court of equity is not deprived of jurisdiction simply because a purely legal question becomes collaterally involved. It might, in its discretion, submit such controversy upon issues made to a jury, or dispose of them without doing so. That the liability of appellee was one of a legal character did not operate to defeat the jurisdiction, and bring its proceedings against him to a stand. These questions seem conclusively settled by White v. Ewing, 159 U. S. 36, 15 Sup. Ct. 1018, 40 L. Ed. 67,—a case which arose upon a like proceeding in the same court, and in which certain questions were certified by the court under the court of appeals statute."

Appellee relies, secondly, on a former adjudication in the supreme court of Tennessee, in the same cause of action, that the Cleveland Water & Electric Light Company had no corporate existence, and was not entitled to sue. It is said that, as the adjudication was against the pretended company, it binds the receiver, who is in privity with the company. It is sufficient answer to this claim to say that the decree dismissing the bill was without prejudice. In County of Mobile v. Kimball, 102 U. S. 691, 705, 26 L. Ed. 238, it was held that a dismissal of a bill without prejudice prevented the adjudication from operating as a bar to the same claim, if the complainants could in another suit obviate the defects of the existing bill. In the supreme court of Tennessee the defects in the bill and case of the company were—First, that no assignment from Cunningham and his associates to the company was alleged or proven; and, second, that the charter was not duly acknowledged or registered. In the present cause the assignment is both averred and proven, and the charter is shown to have been duly acknowledged and recorded. The adjudication by the Tennessee supreme court would therefore prove no obstacle to recovery by the company itself on the same cause of action. Still less, as we shall hereafter point out, can it bar the complainant's action.

It is next contended by appellee that the board of mayor and aldermen had no power to make the two contracts here sued on. By an act to amend the charter of the city of Cleveland, passed by the legislature of Tennessee, April 7, 1893 (Laws 1893, c. 184, §§ 10, 24), the city was given authority "to provide for lighting the streets or public grounds by gas or electricity or otherwise, and to erect lamp posts, electric towers, or other apparatus for lighting said city; * * * to provide the city with water and erect hydrants and pumps, construct cisterns and reservoirs; to lay pipe for conducting and distributing water over the city, and keep the same in repair; to acquire and own stock in any water company organized for the purpose of supplying said city with water for domestic, irrigating, mechanical, or other purposes; to build and construct reservoirs for the storage of water; to purchase a system of water-works for the use

of the city, and enlarge their capacity from time to time, and keep the same in repair, and generally do what may be needful or necessary to be done, by contracting or otherwise, with water companies, or otherwise, or other persons, firms or corporations, in order to supply the city with water for fire, irrigation, domestic, mechanical or other purposes, and regulate the same, and fix the price to be charged private consumers thereof." All franchises and privileges granted by said city were to be limited to 20 years, and to specify the streets to which they applied; but it was stated: "Provided, however, that franchises and privileges may be granted gas, water and electric light companies in general terms, and for a longer period than twenty years, in the discretion of the board of aldermen." The contracts in question provided for the erection and complete equipment of water-works and the electric light plant by the grantees, and the enjoyment by them for 20 years of the franchise of furnishing water and light to the residents of Cleveland, at certain prices, subject to the right of the city to buy the plants, at a price to be fixed in a manner specified, at the end of any 5 years. In consideration of the benefits to be conferred upon the city and its inhabitants by the erection of the plants and the furnishing of water and light, the city agreed in one contract to rent, for the term of 20 years, unless the contract was sooner terminated by a purchase according to its terms, the public hydrants required to be erected, from the grantees for fire use only, at a specified rental, and in the other contract a similar agreement was made for the rental of public lights. The original contracts required that the grantees should provide 40 public hydrants and 18 public lights, respectively, and provided that the grantees should, at the request of the city, extend each system, increasing proportionately the number of public hydrants and lights; the city, in the case of such extensions, to pay a certain sum additional for each hydrant and light furnished as requested.

It is argued that this contract secured to the grantees the exclusive privilege of furnishing water and light to the grantors, and created a monopoly which was beyond the power of the municipal board, because not expressly conferred. Jackson County Horse R. Co. v. Interstate Rapid-Transit Ry. Co. (C. C.) 24 Fed. 306; Saginaw Gaslight Co. v. City of Saginaw (C. C.) 28 Fed. 529; Grand Rapids E. L. & P. Co. v. Grand Rapids E.. E. L. & F. G. Co. (C. C.) 33 Fed. 659. The position is untenable. There is not one word in the contract forbidding the city of Cleveland from making exactly the same contract with another set of grantees. It is true that the city binds itself to use for itself 40 public hydrants and 18 public lights; but it might at once, without the slightest infraction of the contract, agree to rent 40 other public hydrants and 18 other public lights from other persons or companies than the grantees of these franchises. Bienville Water-Supply Co. v. City of Mobile (a decision of the supreme court of the United States, handed down November 6, 1899) 20 Sup. Ct. 40, Adv. S. U. S. 40, 44 L. Ed. ——. It is true that the making of these contracts, if the city fulfilled the obligations therein contained, rendered it unlikely that the city would authorize other persons or companies to enjoy similar franchises, or would make similar con-

tracts with them; but this result arises from the nature of the sub-ject-matter, and not from any contractual exclusion of such action by the city. Indeed, dissatisfaction with such contracts has not infrequently led municipal corporations to grant similar franchises to other persons. There is only one case which would support the contention of appellee upon this head. That is City of Brenham v. Water Co., 67 Tex. 542, 4 S. W. 143. If that case cannot be distinguished from the case at bar, it suffices to say that we do not agree with it, and we follow in this the opinion of the circuit court of appeals of the Fifth circuit, in Bartholomew v. City of Austin, 29 C. C. A. 568, 85 Fed. 359. The truth is that it is most difficult to reconcile with the Brenham Case the decision of the supreme court of the United States in Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341; for, though the supreme court points out one or two distinctions between the Brenham ordinance and the Walla Walla ordinance, the main fact remains that in each ordinance the city gave to the water company the right to use the streets and furnish water for a period of years, and, for the water to be furnished for strictly public use, agreed to pay a stipulated sum for the same period.

It is further urged that one board of mayor and aldermen, though having the right to contract for their own terms, may not bind their successors in office by such a contract in reference to the use of the streets and public franchises. The power conferred upon the board of mayor and aldermen of the city of Cleveland by the amendment to its charter, stated above, is the power to contract for the city; that is, the power to bind more than the agents of the city during their official terms. It is the power to bind the corporation itself, and consequently all its future agents. The distinction between an act which is purely governmental and legislative, and capable of amendment or revocation by the municipal legislature immediately after it is done, and that which is contractual and irrevocable, though effected through the medium of legislation, is well understood, and need not be dwelt upon. It is clearly stated by Judge Sanborn, in the case of Illinois Trust & Savings Bank v. City of Arkansas City, 40 U. S. App. 257, 22 C. C. A. 171, 76 Fed. 271. We have no doubt of the plenary power of the city of Cleveland to make the contracts here under consideration.

The objection to the incorporation of the Cleveland Water & Electric Light Company, founded on the alleged failure of the board of mayor and aldermen, by formal resolution, to assent to the same in advance, although the city recorder certified such assent, and all the members did so assent, and the further objection, founded on the failure of the board to appoint inspectors to report upon the sources of water supply to be used by the company, although the members of the board were actually satisfied, and an analysis showed the water to be pure and abundant, are not formidable. These provisions are for the protection of the city, and after the company has erected the plant, with the fullest assent of the city authorities, and the water supply has proven to be of the amplest and purest character, and the city has accepted the water without any objection, the city is, in a

suit to recover the stipulated price to be paid for the water and light furnished, on the plainest principles of justice estopped to make such objections.

The objection to the contracts, founded upon a limitation upon the taxing power, by which the municipal authorities may not impose a greater tax than 75 cents upon each $100 of taxable property, has no application or relevancy to this discussion; for it is not made to appear what the valuation of all the taxable property in Cleveland is, or what the other municipal expenditures are. The similar objection, that the contracts provided for an expenditure of $100,000 in 20 years, and the statutes of Tennessee forbid such expenditure without a vote of the people, is equally unsound. Such a statutory limitation does not apply to the making of a contract like this, providing for a comparatively small annual rental, obligation to pay which is dependent on the fulfillment of concurrent conditions. Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19, 19 Sup. Ct. 77, 43 L. Ed. 341; Illinois Trust & Savings Bank v. City of Arkansas City, 40 U. S. App. 257, 22 C. C. A. 171, and 76 Fed. 271.

Finally, we are brought to the consideration of the objection to complainant's recovery which led the court below to dismiss the bill. This was that the Cleveland Water & Electric Light Company had no corporate existence, either de jure or de facto, because the laws of Tennessee make no provision for the organization of an artificial person with united powers to construct and operate waterworks and to construct and operate an electric light plant. The general doctrine that one dealing with a corporation de facto is estopped to set up irregularity in its corporate organization as a defense to a suit upon a contract entered into with it is not denied, but it is said that there can be no corporation de facto when a corporation with the same powers might not be organized de jure under the laws of the sovereign. We do not feel called upon to decide the nice questions thus suggested, for there is another view of this suit which renders it unnecessary. Let it be conceded that the Cleveland Water & Electric Light Company has no corporate existence which courts may recognize; we, nevertheless, are of opinion that the receiver herein was entitled to recover on his bill. These contracts were made by the city with Cunningham and his associates, who were competent contracting parties. They were the sole incorporators and stockholders of this nonexistent corporation. They consented to the contracting of the loan and the giving of the mortgage which the main bill herein was filed to collect and foreclose. If there was no corporation to receive the money and contract the debt, to erect the plant, and to execute the mortgage, then these acts were theirs. The complainant in the original bill advanced the money and accepted the lien, if not from the company, then from its pretended incorporators. It seeks by its bill to subject the land purchased and the plants erected with its money, and the contracts which make the plants valuable, to the payment of its debt against the nonexistent corporation and its pretended members. Anticipating the difficulty concerning the corporate character and existence of its nominal debtor, it made the incorporators parties to the bill, averred that they consented to the loan

and the mortgage, and sought to foreclose their interest, as well as that of the incorporate company. And the incorporators have answered, admitting the averments of the bill, and disclaiming any interest adverse to that of the complainant. The bill was not only a foreclosure, but a creditors' bill as well. Such bills are equitable proceedings quasi in rem, and may be conducted to decree with only the constructive service upon, and presence of, the debtor. They are directed rather against the thing than the person. Now, one of the things which the original complainant was entitled to subject to its debt was these lawful contracts with the city; and this, whether they were held and owned by the company or its incorporators, for both were parties to the bill. A receiver appointed to collect rents due on the contracts, therefore, was entitled to enforce, not alone the rights of a nonexistent corporation, but also those of the only other possible owners of the contracts, the pretended incorporators. The plant, the land, the contracts, the manufactured electricity, the pumped water, belonged to some one. They were not derelict. One who should steal a hydrant or a pole or a line of wire would be guilty of larceny, we presume, and, if the property could not be laid in the company, it must be laid in the incorporators. In the same way, the city is liable to some one for the water and the light which it has enjoyed under the contract, and, if the receiver represents the only persons possibly entitled to hold the city for the same, his bill should be sustained. The remarks of Mr. Justice Cooley in Burton v. Schildbach, 45 Mich. 504, 8 N. W. 497, would seem to sustain the justice of this conclusion. Objection is made that the extent of the representative character of the receiver is not shown in the ancillary bill. It appears, however, in the record before this court and the court below, and this is impliedly made part of the ancillary bill by reference to the proceedings. It appears in the record before the court, and the defendant can hardly be said to be prejudiced by a failure to enlarge upon it in an amendment to the ancillary bill. The receiver was appointed to take charge of the assets of the nonexistent company and to collect them. There can be no doubt that included in these were the two contracts, for they are specifically described in the original bill as such. If there was any party to the suit whose interest in these assets entitled him to collect them in case of the established nonentity of the company, the receiver represented him, even though the assets were designated in the order of appointment as those of the company.

But one further objection to the recovery of the receiver remains to be considered. It is said that the evidence shows that the incorporators were merely agents of complainant the National Water-works & Construction Company of West Virginia, and the course taken was merely a device to enable a foreign corporation to do business in Tennessee without complying with the imperative mandate of the statute and condition precedent to the transaction of any lawful business in the state by such corporation, to wit, the registering of its charter. It is a fact that the incorporators of the Water & Electric Light Company were stockholders in the West Virginia company, but that circumstance does not show that one company was to

be a mere cloak for another. It is a common plan to have a parent company engaged in a national business of installing local companies and taking stock in the local companies, but they are distinct legal entities, and the interest of the larger company in the smaller is no reason for holding otherwise. If the Construction Company desired to do business in Tennessee, there would seem to have been no reason why it should not have registered its charter and otherwise complied with the law; for the burden, pecuniary or otherwise, thus imposed, would not have been great. The motive for the elaborate scheme of evasion charged is not commensurate with the trouble involved. We have no doubt that the averments of the original bill correctly state the real relation between the Construction Company, the Water & Electric Light Company, and its incorporators. The Construction Company merely lent money to a supposed Tennessee corporation, and was not engaged in business in that state.

The decree of the circuit court is reversed, at the costs of the appellee, with directions to enter a decree in favor of the receiver against the city of Cleveland for the full amount claimed in the bill, with interest as therein claimed, with costs.