DUDEN v. MALOY.

(Circuit Court of Appeals, Second Circuit. September 26, 1894.)

No. 102.

1. Partnership—Accounting—Interest Charged by One Partner against Another—Waiver of Objection.

In an action by a partner who furnished the capital, against the other partner, for an accounting, the master found that not only did defendant not insist on his objections to certain charges for interest made against him by plaintiff, when the items were brought to his notice, but that from time to time during the partnership, when such charges were made, he acquiesced in them. *Held,* that neither the finding of the master nor the charges would be disturbed, though such charges were large, and such as would not have been allowed on proper objection by defendant.

2. Same—Land Purchased with Partnership Assets—Interest of Partners.

In an action between partners for an accounting, it appeared that defendant was to furnish nothing but his time, and the contract provided that he was to have one-fourth of the profits of each fiscal year by itself, computed in the manner specified, guarantied to amount, for him, to $5,000; that, if they exceeded that sum, he should draw out only $6,000, and leave the balance in the business at 7 per cent. interest, until the end of the partnership, when such balance and interest should be paid to him; and that either party could terminate the partnership by six months' writ-

ten notice. Defendant was paid his full share of the profits, and all money left in the business, and interest, and more. After June 30, 1883, the business continually resulted in loss, and, after such date, land was purchased, and paid for from the firm assets, but the sum paid for it was not large enough to cover the losses, and enough more so that defendant's share of actual, would have exceeded his guarantied, profits. *Held,* that defendant had no interest in such land. Brown, District Judge, dissenting.

3. SAME—SALE OF PROPERTY—WHEN NECESSARY.

In an accounting between partners, it appeared that defendant put in no capital, and the articles provided for the ascertainment of his share in money annually, and, at its close, that all profits standing to his credit, with interest, should be paid him. *Held,* that a sale of the land was not necessary. Brown, District Judge, dissenting.

4. SAME—GOOD WILL.

In such case, defendant had no interest in the good will of the business.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

This was an action in equity by Hermann Duden against Michael Francis Maloy for an accounting of the partnership affairs of the firm of Duden & Co. There was a decree in favor of complainant, and defendant appeals. Affirmed.

For former reports, see 37 Fed. 98; 43 Fed. 407.

William McArthur and David M. Neuberger, for appellant.
Mark D. Wilbur, for appellee.

Before WALLACE, Circuit Judge, and BROWN and WHEELER, District Judges.

WHEELER, District Judge. This suit was brought in a state court to close the affairs of a partnership, and recover an alleged balance due to the appellee, and was removed into the circuit court for the eastern district of New York, and proceeded with there in equity to an accounting before a master, and a decree for a balance due to the appellee, from which an appeal was taken to this court. The assignment of errors raises questions as to the rights of the parties upon the accounting, and to property remaining. The appellee was before this partnership a member of the firm of Duden & Co., lace dealers, having a principal house at Brussels, in Belgium, other houses at other places in Europe, and a store in New York. The appellant was employed in a responsible position in the New York store. In April, 1878, he was admitted as a partner under articles into the New York business. The arrangement contemplated a continuance of the former business, to which the appellant should contribute nothing from without but his personal services. The articles witnessed that the appellee, as party of the first part, and the appellant, as party of the second part, "agreed to become copartners to conduct the business of dealing in lace goods at the city of New York, under the firm name of Duden & Company, the partnership to commence on the fifth day of April, one thousand eight hundred and seventy-eight, and to terminate on the thirtieth day of June, one thousand eight hundred and eighty-

three, with liberty to either party to terminate the same at any time, by giving six months' notice in writing to the other of his intention so to do;" that the party of the second part should devote his whole time and attention to the business; that true and correct books of account should be kept by him, or under his supervision, in which all the transactions of the copartnership should be properly entered; that an account of stock should be taken, and the books balanced, on the 30th day of June in each and every year; and—

"Third. It is mutually agreed that the net profits of the business shall be divided as follows: Seventy-five per centum thereof to the said Hermann Duden, and twenty-five per centum thereof to the said M. Francis Maloy; such profits to be arrived at by deducting all the expenses of the business, including traveling expenses, all losses from bad debts, interest on the capital employed in the United States business, and, in addition thereto, ten per centum each year on all goods remaining unsold and in stock at the city of New York or any part of the United States at the time of taking stock. And the party of the first part agrees with and guaranties to the said party of the second part that his share of the profits shall amount to not less than five thousand dollars currency of the United States each and every year during the continuance of this copartnership." "Fifth. And it is mutually understood and agreed that, in case the share of the profits of the party of the second part exceeds the sum of five thousand dollars currency per annum, he shall not draw more than one thousand dollars of such excess, but the residue thereof shall be left in the business, and draw interest at the rate of seven per centum per annum, which interest may be drawn by the party of the second part on the last day of June and December in each year, or credited to his account, and left in the business at his option. Sixth. That, in case of the death of the party of the second part before the expiration of this agreement, his share of the profits up to the time of his death, including any amount that may remain due to him from previous years, shall be paid to his executors or administrators. In determining the amount so to be paid, the profits from the first day of July preceding his death up to the date of his death shall be computed to be the same as the profits for the corresponding period in the previous year. Seventh. Upon the expiration of this agreement, all profits that may be standing to the credit of the party of the second part, including any interest that may be due thereon, shall be paid to the party of the second part, his executors or administrators, in four equal installments, payable in three, six, nine, and twelve months, respectively, from such expiration."

An account of the stock of the store in New York was taken at the commencement. Goods for that store were furnished, and charged to it, by the house in Brussels and other European houses. Accounts of stock were taken on each 30th of June afterwards, and computations of profit and loss were thereupon made, as provided for in the partnership agreement, which, after that first taken June 30. 1878, showed profits for each year to and including the one ending June 30, 1883. In that year the partnership was extended five years upon the same terms mentioned, and land was bought, for which $8,000 was in the next year paid out of the proceeds of goods of the New York store, and upon which a factory was built and furnished for the manufacture of goods for that store, the cost of which was reckoned in computing profit and loss afterwards. The account of stock and computation of June 30, 1884, showed a loss in the year preceding of $22,740.46, and that of June 30, 1885, a loss of $1,517. The appellant gave notice of termination of the partnership at the expiration of six months from its receipt,

which would be January 23, 1886; and an account of stock was afterwards taken as of that date, and a computation made according to the articles, with proportionate reductions of the 10 per cent. for the part of a year expired, which showed a loss of $34,002.67. The appellant had overdrawn his share of profits, actual and guarantied, according to these computations, to the amount of $4,262.06. As the appellant, according to the master's findings, had received this sum more than his share of profits, the master reported this sum to have been due from the appellant to the appellee at the close and as the result of the partnership business. The title to the lands bought for the factory stood in the name of one Myron Winslow. After this suit was brought the appellant brought a suit in the supreme court of the state against the appellee Winslow and others, as having interests, in which he obtained a final decree for a conveyance from Winslow and wife, by "a quitclaim deed unto the firm of Duden & Company, of New York, of all interest in and to said lands and premises, the subject-matter of this action, with the improvements therein and the appurtenances thereunto belonging, the same to inure to the benefit of the said copartnership of Duden & Company, of New York, according to the respective rights of the partners therein, including the above-named plaintiff." Upon the bringing of that decree into this suit, the master herein was directed to take a further account, "on the theory that the 'factory business,' so-called, referred to in the testimony herein, was a partnership enterprise, and that the land, business, and appurtenances formed part of the assets of Duden & Co., of New York, at the dissolution of that partnership, and that all money paid out for land, factory buildings, machinery, appurtenances, labor therein, etc., together with all other like costs and disbursements incidental to the operation of the said business, are chargeable to the said firm of Duden & Co., of New York; and also to take and state the profits and losses from the said factory business with the other accounts of the said firm," and the value of the good will of the firm of Duden & Co. at the beginning and at the end of this partnership. Upon the taking of this further account, the master reported that the factory enterprise was carried on at a loss in each of the years while the firm was engaged in it, and at a loss in the whole, reckoning the land at its cost when bought, and the factory property at $32,000, its value as found by him at the close; that the value of the good will of the New York store taken by the partnership equaled the value of that left by it; and that the amount due from the appellant was not by these additional findings varied. Many of the exceptions to the master's report, upon the overruling of which by the circuit court error is assigned, were to findings of fact upon contradictory evidence submitted to the master. The case was referred to the master, "to take and state the accounts between the parties," upon consent in writing, signed by counsel, after exceptions sustained to the answer, upon the bill, without being taken pro confesso or admitted by further answer or otherwise established. This course submitted to the master all of the issues which would be involved in taking the accounts.

The accounts appear to have been taken by the master with much painstaking care, and his conclusions appear to have been reached upon warrantable evidence, well weighed and considered by him. The statements of the accounts so taken are to be presumed correct, unless plain errors are pointed out by specific exception, and not left to be sought out under general statements of error. Railway Co. v. Gordon, 151 U. S. 285, 14 Sup. Ct. 343.

One important question attempted to be raised relates to interest amounting in the whole to a large amount charged in behalf of the Brussels house on the price of goods for the New York store. These charges may have been large, and such as would not have been allowed if they had been objected to, and the objection had been insisted upon when the items were brought to the notice of the appellant; but the master has found, upon evidence so weighed and considered, not only that the objection was not insisted upon, but that from time to time during the partnership, when such charges were made, the appellant acquiesced in them. This finding cannot with propriety be disturbed, and with it these charges cannot be disturbed.

Other important questions relate to the interest of the parties in the property, and especially in the real estate of the factory. As these questions are wholly between the partners themselves, and not between them, or either of them, and any third person, these rights are to be determined according to the effect of their partnership agreement as the foundation of their respective rights. In Paul v. Cullum, 132 U. S. 546, 10 Sup. Ct. 151, Mr. Justice Harlan said:

"While, in the absence of written stipulations or other evidence showing a different intention, partners will be held to share equally both profits and losses, it is entirely competent for them to determine as between themselves the basis upon which profits shall be divided and losses borne, without regard to their respective contributions, whether of money, labor, or experience, to the common stock. Story, Partn. §§ 23, 24. Such matters are entirely within the discretion of parties about to assume the relations of partners."

By the terms of the agreement, the appellant was to have one-fourth of the profits of each fiscal year by itself, computed in the manner prescribed, guarantied to amount, for him, to $5,000. With this provision in his favor, he would not share in losses which would bring the profits of a year below $20,000, whereby his share of actual profits would be less than $5,000, and he could resort to guarantied profits; and these losses were not cumulative from year to year in reduction of future profits, but were to remain as they should fall in each year upon the appellee. If the profits in any year should exceed $20,000, so that his share would be more than $5,000, as he could not draw out more than $6,000 he might still have a part of his share of profits remaining from year to year in the business; but as the articles provided for the repayment thereof to him, with interest, he took no risk of losses as between himself and the appellee as to that.

It was entirely competent for the parties to provide that, upon the dissolution of the partnership, the firm assets should be retained by the appellee, and the interest of the appellant therein be satisfied

by a payment in money.    Col. Partn. § 17;  Assurance Co. v. Dren-
nen, 116 U. S. 461, 6 Sup. Ct. 442.    While the articles do not con-
tain any specific provision to this effect, it is plain from what they
do provide that it was the intention of the parties that upon a
termination of the copartnership, whether by lapse of time or upon
notice by either party, the appellant should be paid in money for his
interest in the business and assets, and, upon a termination by his
death, such payment should be more speedily made to his legal repre-
sentatives.    They provide for a payment in money for all profits to
which he was entitled to credit at the time of dissolution, upon the
basis fixed by the articles.    The surplus profits remaining in the
business, under the fifth clause, are to be repaid, with interest.    The
profits not liquidated at a preceding annual accounting are to be
ascertained, and paid upon the basis prescribed by the third clause.
The seventh clause, in providing the terms of the adjustment to take
place upon the expiration of the agreement, necessarily provides for
the same adjustment, whether the expiration occurs by lapse of time
or by notice.    It cannot be imagined that the parties, without mak-
ing any such express provision, intended to have one mode of ad-
justment upon a dissolution caused by death or by the expiration of
the original term of the copartnership, and another in case of a dis-
solution by a six-months notice under the articles, if either should
find such earlier expiration to be desirable.    The provision for a
money payment to the appellant, which must fall upon the appellee
at the termination of the partnership, is wholly inconsistent with
any idea that the appellant was to have any further interest in the
firm assets.    It implies decisively the understanding of the parties
that the appellee was to have the assets, and suggests that they
probably contemplated that these assets would be the source from
which the appellee should realize the money which he would be
called upon to pay.

The statement of the appellant's account upon the computation
of profits to June 30, 1883, which was furnished to him, and as to
which he replied, "Its correctness is hereby acknowledged," showed
that he had received his full share of all profits to that date, and has
been repaid all profits left by him in the business, with interest,
according to the articles, and $400.18 more.    The state court
did not construe the partnership articles, or state the partnership
accounts, or in any manner ascertain the respective interests of the
partners, but merely found and held that the land and factory be-
came partnership property, because they were paid for with partner-
ship assets.    They were paid for from the assets after June 30, 1883;
and, as the business ever after resulted in a loss, this payment would
not affect the appellant's share at all, unless the amounts paid would
cover the loss, and enough more so that his share of actual would
have exceeded his guarantied profits.    This payment for the land
was not nearly large enough for that, and, making it out of partner-
ship property, was, in effect, a mere transfer of what might, and ulti-
mately did, become the sole property of the appellee from the store
to the land.    The payments on account of the factory otherwise re-
sulted in a net loss, as the master has found and reported; and the

result of them in the partnership assets could not and did not in any way affect the appellant's share. The judgment of the state court was, and appears to have been assumed by the circuit court to have been, conclusive of the fact that the land was bought with partnership assets, which raised a trust in favor of the partners, and it is so considered here; still, as the trust and conveyance were by the decree to inure to the benefit of the partnership, according to the respective rights of the partners therein, and as the appellant, as partner, had no such right resulting as a trust from the payment, or remaining to him after receiving in money his full share of the result of the partnership venture, nothing thereby inured to his benefit. His interest in the land rested upon no firmer foundation and was no more permanent than his interest in the goods or other property; and the full measure of all of his rights to the goods, lands, or property was satisfied, and his interest therein terminated, when he had received in money his actual or guarantied share, ascertained and computed according to the terms of the partnership articles. For what he had received more, he was liable to the appellee, and the decree appealed from charged him with that only.

Ordinarily, as has been urged, goods or property of a partnership must be, by sale or other process, converted into money on winding it up, and neither partner can take it on an appraisal, or hold it against the other, and leave its value to be found. But in this case, as the articles themselves provide for the ascertainment of the appellant's share in money annually during the continuance of the partnership and at its close, they, in effect, provide for the sale of the interest of the appellant to the appellee at the price ascertained in determining his share. This disposes of the question of property in good will also, in which no right would remain to him more than in the other property, and which the master disposed of upon the finding that the good will taken equaled in value that left. These considerations cover all questions properly raised, and show that there was no error in the decree of the circuit court. Decree affirmed.

BROWN, District Judge. I concur in the disposition of the points raised on appeal, except as respects the land, which, in an action in the supreme court, conclusive as between these parties, has been adjudged to be partnership assets, and ordered to be conveyed to a receiver. The land has been so conveyed, and is now held by the receiver so appointed, for the benefit of the firm. In the account taken, the plaintiff, Duden, has been charged $32,000, as the value of the land and factory property at the close of the partnership, several years before that adjudication. The necessary effect of that charge, if allowed to stand, will be to transfer the land equitably to Duden, at that valuation; and to require the receiver to convey it to Duden without any sale of it, or any determination of its value by a sale, as is usually required. The defendant, Maloy, has duly excepted thereto, claiming that the land is worth far more than the valuation put upon it; and he insists upon a sale. Unless the articles otherwise provide, or unless the partnership was a partnership in profits only, as the plaintiff on the argument of this ap-

peal contended, Maloy is entitled to a sale, under the well-settled rule that forbids any preference to be shown to one partner over another in the liquidation, and hence disallows either partner to take the assets at a valuation, in case of disagreement, and requires that the firm property be sold. 3 Kent, Comm. 64; Lindl. Partn. 857; Col. Partn. §§ 308–313.

This was not, however, a partnership in profits only. That means that the property used, or dealt in by the firm, is not firm property, but remains always the individual property of one or more of the partners. That is a rare and exceptional kind of partnership. That such is not the present case seems to me evident (1) from the face of the articles themselves, which declare a general commercial partnership for "dealing in lace goods," and (2) from the fact that millions of dollars' worth of laces have been bought and sold in the firm name, in the ordinary course of commercial partnership dealings; all of which appear in the firm name, in the partnership books, which the defendant was required to keep, and did keep. It is impossible, as it seems to me, to hold that all these goods were intended to be bought and sold as Duden's individual property. Every line of the firm accounts contradicts this theory. The adjudication of the supreme court also has adjudged as between these parties that the property was firm property, the land being held to be firm assets because bought with funds of the firm.

Nor do the articles, as far as I can perceive, contain anything to exclude or vary the ordinary legal rules applicable to the winding up of a partnership on dissolution in case of disagreement. They contain no provision giving to either partner any preference, or any right to take the firm assets to the exclusion of the other partner, either at a valuation, or otherwise. There is nothing whatsoever in the articles upon that subject.

By the second article, Maloy, who was to keep the books of account, agreed "that an account of stock should be taken, and the books balanced on the 30th of June in each and every year." By the third article, after agreeing that the net profits should be divided, 75 per cent. to Duden, and 25 per cent. to Maloy, it was declared: "Such profits to be arrived at by deducting expenses, bad debts, interest on capital, and 10 per cent. each year, on all goods remaining unsold, etc., at the time of taking stock," i. e. June 30th.

These provisions for taking an account of stock, and balancing the books, on each 30th of June, had, in my judgment, no reference to the final liquidation of the firm business. They were expressly designed for each year during the copartnership, and they were for the purpose of ascertaining approximately the profits of each year, and how much might be drawn out by each partner. As the account was to be taken on each June 30th, and was to embrace the business up to that same day, much would necessarily remain uncertain in the outstanding credits, and subject, therefore, to correction, in case of subsequent losses in collections on that year's business. Every such annual account was, therefore, provisional only; and if any such account was taken on the last June 30th, at the end of the partnership, it could not possibly be final. It is plain, therefore,

that these annual accounts had no reference, and were not intended to have any reference, to the liquidation of the firm business, or to the accounts to be taken on liquidation. Similarly the 10 per cent. deduction in the price of stock on hand, was merely for the purpose of taking these annual accounts, and to ascertain provisionally the share of profits distributable to each. When this deduction was made in each annual account, that did not give the stock to either partner to the exclusion of the other. The stock remained firm property as before. It was the same at the close of the partnership. The stock on hand remained still firm property, to be disposed of as such in liquidation; and there is not the least intimation in the articles that either partner should have any preference in the right to liquidate the business for his own profit, to the exclusion of the other partner, or to take the stock at a valuation, contrary to the settled law; nor is there anything in them requiring Duden rather than Maloy to take the stock at a loss, if it should prove to be worth less than the estimate. Duden was bound by his personal guaranty to make good to Maloy $5,000 as his share of the profits annually; he was bound to nothing more, except what the ordinary rules of law impose.

The provisions of the fifth and seventh articles seem to me to be without the least prejudice to the equal rights of both partners in liquidation, and to have no bearing thereon. The seventh article, provided that Maloy at the termination of the partnership, "should be paid * * * all profits that may be standing to his credit, including interest that may be due him thereon." This has evident reference to the fifth article, which required Maloy to leave "in the business" "all excess of his share of the profits" over $6,000, "drawing interest at seven per cent." The seventh article did not require Duden in the first instance to pay those profits; they would be "paid," quite consistently with the articles, out of the assets, if the firm was solvent, in due course of liquidation, by whoever had charge of the final liquidation, i. e. by both partners together, or by either alone, as might be agreed on, or in case of disagreement, by the receiver necessarily to be appointed. If the firm was insolvent, these back profits would be absorbed by creditors, and could not be paid from the assets at all; although Duden would be ultimately bound by his personal guaranty to make them good to Maloy, through his guaranty of profits in the subsequent business. The postponement of Maloy's right to be paid his apparent profits, to 3, 6, 9 and 12 months, was appropriate and necessary for the correction of errors, according to the ultimate results of the liquidation, as well as to know whether they could be paid out of the assets, or must be paid by Duden personally. There was no similar express provision for paying Duden's profits, inasmuch as Duden was not required to leave any profits in the business.

The provisions of the fifth and seventh articles, therefore, seem to me to contain nothing any more than the second and third, to render inapplicable the ordinary rules of law as to the equal rights of partners in liquidation, and Duden, therefore, could not take the land at a valuation against Maloy's consent.

The assets, other than the land, have been disposed of by Duden, after an injunction obtained by him; and no exception is taken by Maloy as to the disposition of the goods; but the land, in a special suit, has been procured by Maloy to be conveyed to a receiver, to be disposed of on the firm account. The only possible purpose of the judgment of the supreme court in ordering the land to be conveyed to a receiver was, that it should be sold. If Duden was only to be charged with its value at the close of the partnership, the conveyance to a receiver was useless, and improper. To refuse a sale, and require in effect that the land be now conveyed by the receiver back again to Duden without a sale, seems to me to refuse to abide by that adjudication, and in effect to annul it pro tanto. The land, moreover, has never been treated as stock; never subjected to the 10 per cent. yearly deduction; and is not so treated in the commissioner's account, and it would evidently be improper to treat it in that way. It is still a firm asset.

Independently of the adjudication of the state supreme court, the refusal of a sale of the land seems to me to be erroneous, because opposed to the well-established rule that disallows to one partner the advantage of taking the assets at a valuation, when the other partner demands a sale; because it refuses to admit the proper legal criterion of value; and because the articles in this case cannot justly be construed to vary that most important rule, or to have intended any variation of it, inasmuch as they contain no express provision on the subject; and because full effect can be given to every word in the articles without any such result; and when that is the case, a different construction of them is not admissible to set aside so important a rule of partnership law.