### RUGGLES v. BUCKLEY et al.

(Circuit Court of Appeals, Sixth Circuit. January 7, 1908.)

No. 1,637.

1. PARTNERSHIP—EXISTENCE OF RELATION—EVIDENCE TO ESTABLISH.

Partnership is a fact, which like any other fact may be established by circumstances, and it is not essential to its existence that there should be a partnership name or a formal partnership agreement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partnership, §§ 1, 64, 75.]

2. SAME—EVIDENCE CONSIDERED.

Defendant, who was without capital, entered into an agreement with complainant to render services in the business of dealing in timber lands, which complainant was to control, and for which he was to furnish the

capital. He was to receive, interest on such capital as a preferred profit, and defendant was to draw a certain sum annually on which he was to pay interest, the remaining profits to be divided between them. After a few years the business was extended to include the manufacture of lumber, and defendant took in a partner for that purpose and later incorporated. A railroad company was subsequently organized and a road built. For all these enterprises the capital was largely supplied by complainant, but no formal partnership agreement was made between the parties nor were they publicly known as partners. Later on, however, two written agreements were made between them defining the interest of each in the entire business, and one of which contained a statement of the amount due therefrom to complainant on account of capital and advances, and also the amount due to the business from defendant on account of withdrawals. *Held*, that the relations of the parties were those of partners, and that the partnership continued and extended to all of the various enterprises.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partnership, §§ 13–28.]

3. SAME—PARTNERSHIP CONTRACT—INTEREST ON SURPLUS CAPITAL.
Where one partner furnishes all or more than his share of the capital in the business, he may contract for any rate of interest on the surplus of capital so furnished to be paid out of the profits as preferred profits.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partnership, §§ 121–123.]

4. SAME—EFFECT OF DISSOLUTION.
An agreement made between existing partners containing stipulations for the future conduct of the business ceases to be operative on and after a dissolution of the partnership by a decree of court.

5. SAME—DISTRIBUTION OF ASSETS—DISCRETION OF COURT.
On the dissolution of a partnership by a decree of court, where the assets include stock in corporations it is within the discretion of the court to divide the same in specie when other assets are sufficient to pay all obligations of the firm.

Appeal from the Circuit Court of the United States for the Southern Division of the Western District of Michigan.

This bill was filed by Charles F. Ruggles against Edward Buckley et al., to wind up an alleged partnership business between the complainant, Ruggles, and the defendant Buckley. Prior to 1875, and for many years thereafter, both Ruggles and Buckley (hereinafter called complainant and defendant, respectively) resided in Manistee, Mich. The complainant was a successful business man at the date mentioned, dealing principally in buying and selling timber lands. The defendant, who was a hardware, dealer, had failed in business and was a bankrupt. These parties were brothers-in-law, the defendant's wife being complainant's sister. In 1875 they entered into a business relation wherein the defendant was to render certain services in the timber land business of the complainant, and the latter was to furnish the capital and to manage the business. The complainant was to be paid out of the business, as a preferred profit, 10 per cent. interest annually on the money he advanced, and the defendant was to withdraw $1,200 per annum from the business, and pay 10 per cent. interest annually thereon. Complainant was to have two-thirds and defendant one-third of any profits of the business that remained. In 1878 they also engaged in the lumber manufacturing business, to which the defendant principally gave his attention, while the complainant exercised a general management of all the business, including the lumber business. In 1880 they decided to interest in this business a Mr. Douglas, who was a logger, and the firm of Buckley & Douglas was formed, in which Buckley was to have three-fourths of the profits, and Douglas one-fourth. From 1875 down to, and including, 1880, the business transacted by complainant and defendant was entered on the books of the complainant, used by him prior to 1875. To distinguish Ruggles' former business from this joint

business, the latter was designated new business. No firm name as between the complainant and the defendant was ever adopted. Their business relation was not made public. The profits of the business down to, and including, 1880 were divided in the proportion as before stated. Soon after the firm of Buckley & Douglas was formed, the open accounts of the business of complainant and defendant from 1875 down to that time were transferred from Ruggles' books to new books labeled "Edward Buckley," on which thereafter the business of Buckley & Douglas was also entered. At the time the firm of Buckley & Douglas was formed, complainant and defendant agreed to divide the net profits of their business thereafter equally. In 1887, in order to reach a large body of timber, the Manistee & North Eastern Railroad Company was organized, and a railroad 18 miles long was constructed, known as the Manistee & North Eastern Railroad, at a cost of more than $65,000, which was largely furnished by complainant. Buckley took three-fourths and Douglas one-fourth of the stock of this railroad company, of which the defendant was president, complainant vice president, and Douglas secretary. The road has been extended until now it is more than 100 miles long. In 1892, the firm of Buckley & Douglas was incorporated under the name of "The Buckley & Douglas Lumber Company." Buckley took three-fourths and Douglas one-fourth of its stock. Down to this time, 1892, the complainant had furnished practically all the money that had been used by Buckley in these enterprises, and had been constantly consulted and advised with about the conduct and management of these different businesses, and largely controlled them. In September, 1891, complainant left Manistee on account of certain troubles wholly unconnected with his business, and remained away until 1900 at which time he returned to Manistee. Until just prior to complainant's return to Manistee, his personal relations with the defendant had been of a most cordial and confidential character. During the latter part of complainant's absence from Manistee, he became dissatisfied with defendant's conduct in relation to their joint business, which culminated in the filing of the bill in this case in August, 1900. During his absence he was often visited by defendant and their business affairs were discussed, and he continued to participate in directing and managing the business. On October 2, 1891, while complainant was sojourning in Canada, he transferred and delivered all of his property and holdings to the defendant. These transfers were made to cover complainant's property, in consequence of his troubles at Manistee, and the property was afterwards retransferred to complainant. On April 22, 1893, at Clifton, Canada, complainant and defendant entered into a written agreement, which is known in the record as the "Clifton Agreement." It is in the following words and figures, to wit:

"That the business and property represented by and in the books labeled Charles F. Ruggles, is and always was the property of Charles F. Ruggles, individually.

"That the business and property represented by and in the books labeled Edward Buckley, and also the books labeled Minnesota Land business, is the property of said Buckley and Ruggles, jointly, each owning one undivided half interest.

"That the three-quarter interest of Edward Buckley in the business and property represented in and by the books of Buckley and Ruggles, and the Buckley & Douglas Lumber Co., and the Manistee & North Eastern R. R. Co., belongs to and is the property of said Buckley and Ruggles jointly, each owning one undivided half.

"That upon the commencement of the business represented in all the books above mentioned—excepting the books labeled Charles F. Ruggles—it was agreed by and between the parties hereto, that the time of Edward Buckley and his whole and undivided attention should be used in attending to and promoting all the business above referred to, and protecting and caring for the property above represented, regardless of to whom it belonged, including the individual property of Charles F. Ruggles, and that said Buckley was and is to make no charge for his time and services. Further, that said Buckley was to keep the whole of said Ruggles' money invested in the above business, and to allow interest at the rate of 10 per cent. per annum, payable annually the 31st day of December of each and every year, on the money of said Ruggles, so invested, and on the daily balance of said Ruggles, both in his own (Rug-

gles' books) and all the other books, until said money, together with interest thereon, was fully returned to said Ruggles, after which one half of the surplus and profits should go to said Ruggles, and the other half to said Buckley, in full for his services, time and profits, for managing the whole business, including the private business of said Ruggles, in which said private business said Buckley is at no time to have any interest in or any profit from."

Defendant's wife, who was complainant's only sister, died, and in March, 1894, he married the second time. In June, 1894, defendant executed a last will and testament in which complainant was made the residuary legatee. After deducting the special bequests provided for therein, there was left for the residuary legatee, property about equal in value to complainant's interest in the business, as is shown by an inventory of the joint business of December 31, 1893, and also as is shown by the Clifton agreement of 1893. A copy of this will defendant sent to complainant. The Clifton agreement contains several clauses, setting out the business relation between complainant and defendant, and the interest each had in the business. On February 3, 1896, in Chicago, Ill., a second written agreement was entered into between complainant and defendant, in which was incorporated the Clifton agreement, and the same reaffirmed. In the Chicago agreement it is agreed that the amount due complainant on December 31, 1895, from the business on account of the capital and advances he had invested in said business, including interest thereon, is the sum of $881,525.05. It is further agreed that the amount due from defendant to said business on December 31, 1895, for money withdrawn by him from the business, including interest thereon, over and above the amount of capital and advances made by him to said business, is the sum of $226,253.72, and that of this amount, $77,412.79 was drawn by the defendant in excess of the amount that he should have drawn. On this last amount, defendant was to pay additional interest at the rate of 5 per cent. per annum. The remainder of this last agreement refers to questions of interest and application of payment, and the securing of certain indebtedness, not necessary to mention here. It was evidently intended as a starting point from which to begin to bring the business to a close.

The defendant does not deny the execution of either the Clifton or the Chicago agreements, but insists that they are not true, and do not correctly state the relation between him and the complainant. The bill alleges that they are and have been partners since 1875, the answer admits that they were partners from 1875 down to 1880, but denies they were partners after 1880, except in the buying and selling of timber land, and sets up that since that date complainant has had no interest in the lumber or railroad business, and that the money advanced by complainant to him was a loan to him, and that for such money the relation between himself and complainant is that of debtor and creditor. The bill prays that the partnership existing between them be dissolved, and the business wound up, and for that purpose that a receiver be appointed to take charge of all the partnership property, that the case be referred to a special master for an accounting between the complainant and defendant, and for general relief.

An interlocutory decree was pronounced in the case on December 12, 1903. Therein it was decreed: (1) That complainant and defendant were partners. (2) That said partnership be dissolved. (3) That the cause be referred to a special master for an accounting with reference to said partnership, with full directions for taking and stating the account. (4) That Jno. Patton be appointed receiver of all the property and assets of the partnership (with certain exceptions). (5) That a preliminary injunction as prayed for in the bill be granted.

The case was finally heard upon its merits on March 15, 1906, and the decree of March 12, 1903, approved, except as to one or two matters relating to the question of interest. The special master was spared a vast deal of labor by the parties agreeing in writing as to the condition of the account between them, assuming that the court below was correct in holding that they were partners. It was, however, expressly provided in this agreement that nothing in the language or terms used therein should be construed as an admission by the defendant of the existence of a partnership between Chas. F. Ruggles and Edward Buckley, nor of the validity or effectiveness of the contracts of 1893 and 1896.

, The complainant and the defendant Buckley excepted to the decree of the Circuit Court, assigned errors, and have appealed.

F. W. Stevens and G. D. Van Dyke, for appellant.
Benton Hanchett and W. S. Humphrey, for appellees.

Before LURTON and RICHARDS, Circuit Judges, and McCALL, District Judge.

McCALL, District Judge (after stating the facts as above). The controlling question here is whether or not complainant and defendant have been partners since 1875 in the timber land business, in the manufacture and sale of lumber, and in the construction and operation of the Manistee & North Eastern Railroad. The defendant assigns 29 errors, the first 4 of which raise the main question of fact, and may, therefore, be stated together, and so disposed of.

They are to the effect that the Circuit Court erred in decreeing that complainant and defendant were partners in the business recorded in the books labeled "Edward Buckley," and that complainant was a subpartner with defendant in the business of Buckley & Douglas, and that the three-fourths of the capital stock standing in the name of Edward Buckley in the Buckley & Douglas Lumber Co., and also in the Manistee & North Eastern Railroad Co., were assets of the partnership of Ruggles and Buckley. It is neither contended by any one that there was a written partnership agreement between the complainant and the defendant, nor that there was a partnership name adopted. The business relation of the parties in this case must, therefore, be determined from the facts and circumstances under which the business was begun and conducted. And for this purpose, we may consider what the parties said, their correspondence, the manner of keeping their books, the source of the capital invested, the disposition of the profits, the relation or connection of each party to the business, and its character, and, more important still, the relation the parties themselves understood they bore each to the other and to the business during the years in which and while the business was going on. The fact of a partnership, like any other fact, may be established by circumstances. It does not follow that because there was no partnership name, nor formal partnership agreement, there was, therefore, no partnership. "Partnership is a fact—a fact sometimes made out like other facts, from circumstances as well as by direct evidence." Fechteler v. Palm Bros. & Co., 133 Fed. 462, 66 C. C. A. 336; In re Neasmith, 147 Fed. 165, 77 C. C. A. 402.

When we examine the record for facts and circumstances tending to prove that a partnership existed between Ruggles and Buckley from 1875 down to March 12, 1903, the evidence clearly preponderates in favor of the proposition that such a business relation existed between them, and there is no escape from the conclusion to that effect reached by the Circuit Court.

True, the parties did not make public the fact of their business connections, indeed, for reasons satisfactory to themselves, they may have concealed that relation; yet, if in point of fact, they were copartners, the concealment from the public of their true relation would

not in the least affect that relation as between themselves. But we are not left to mere circumstances from which to determine the business relation existing between complainant and defendant. That is made clear, and the interest complainant had and has in the business, and his relation to it is stated by Buckley himself in the Clifton agreement of April 22, 1893, and the Chicago agreement of February 3, 1896. In addition, in August, 1895, the defendant wrote a letter to his legal adviser, Mitchell J. Smiley, in which he says that while he has appeared to own and control the capital invested in the business conducted by him at Manistee, Mich., and elsewhere, since 1874, and the business conducted by himself and Douglas, including the Buckley & Douglas Lumber Co., and the Manistee & North Eastern Railroad Co., and the construction company that built said road, the fact is, and always has been, that Charles F. Ruggles is, and always has been, the owner of said capital, etc. These two agreements, and this letter, together with other facts and circumstances in the record, are wholly inconsistent with the claim attempted to be set up by the defendant for the first time after the bill was filed, to the effect that complainant was only a creditor of Buckley for money loaned him since 1880, and with which he had conducted this extensive business. The facts and circumstances here make a case that falls squarely within the definition of a partnership as laid down by Mr. Justice Gray in Meehan v. Valentine, 145 U. S. 611, 618, 12 Sup. Ct. 972, 973, 36 L. Ed. 835. He said:

"The requisites of a partnership are that the parties must have joined together to carry on a trade or adventure for their common benefit, each contributing property or service, and having a community of interest in the profits." Ward v. Thompson, 22 How. 330, 16 L. Ed. 249; Fleming v. Lay, 109 Fed. 954, 48 C. C. A. 748.

We considered and discussed somewhat fully this question in Fechteler v. Palm Bros. & Co., supra, and there held that "the intent to be partners is made out when we find a business carried on for the joint benefit of two or more persons, with an agreement for a mutual participation in profits, as profits."

It is earnestly and ably insisted by counsel for defendant that the terms of the partnership as disclosed by this record, and insisted on by counsel for complainant are illegal and unconscionable. Illegal, in that it provides for usurious interests compounded. And to permit the business to be wound up under such terms would be against public policy, and a great hardship on the defendant.

In the view we have taken of the case, the question of usury is eliminated. Where one partner furnishes all or more than his share of the capital in the business, he may contract for any rate of interest on the surplus of capital so furnished by him, to be paid out of the profits of the business, as preferred profits. If there are no profits, or the business fails, he gets no interest and loses his capital. It is for this additional risk that he is permitted to charge and receive from the business as a preferred profit, in the event it is earned, a return exceeding the legal rate of interest upon the capital so advanced. Paul v. Cullum, 132 U. S. 546, 10 Sup. Ct. 151, 33 L. Ed. 430; Duden v. Maloy, 63 Fed. 183, 11 C. C. A. 119.

In Paul v. Cullum, supra, Mr. Justice Harlan, speaking for the court, says:

"While in the absence of written stipulations or other evidence showing a different intention, partners will be held to share equally both profits and losses, it is entirely competent for them to determine, as between themselves, the basis upon which profits shall be divided and losses borne, without regard to their respective contributions, whether of money, labor, or experience, to the common stock. Story on Partnership, §§ 23, 24. Such matters are entirely within the discretion of parties about to assume the relation of partners."

The terms of the partnership agreement, considered from the present, may appear hard. But even a court of equity cannot grant relief from a legal contract entered into freely and understandingly, and from time to time reaffirmed and complied with without complaint for a quarter of a century. Especially is this true, when the party seeking such relief admits its execution, and does not allege and prove deceit, fraud, duress, or that he was in some way overreached in its execution.

As was said by this court in Blake v. Pine Mountain Iron & Coal Co., 76 Fed. 624, 22 C. C. A. 430:

"It is just these hardships which a court of equity cannot relieve by rescinding contracts, or making new ones by construction, through the process of balancing blame for nonperformance, and going into parol proof of other or different intentions than those expressed in the contracts themselves, intentions relating to failures not anticipated at the time the contracts were made, or not provided for by the terms of the agreement, as they would have been if the parties had not been improvident in neglecting such protection as was open to them against possible failure and change of conditions. The reasonableness of a contract, its fairness and justice, are to be determined as of the time when the parties entered into it, and so of the intentions involved in the construction of their agreements, and none of these are to be influenced by the force of subsequent changes in events or circumstances. Fry, Spec. Perf. p. 193, c. 6. It may be an improvident contract, but improvidence or inadequacy does not determine a court of equity to rescind, or to decree against specific performance."

The defendant, however, under the terms of a partnership which his counsel insist are hard and unconscionable, began as a bankrupt, and in a quarter of a century has accumulated an estate amounting to nearly $1,000,000, and withdrew from the business during this time quite a quarter of a million for expenses.

This bill, however, is not brought to enforce specific performance of a contract, but rather to dissolve a partnership and to wind up its business, which is quite another proposition.

We come now to consider the two errors assigned and pressed upon our attention by the complainant.

First. It is insisted that the Circuit Court erred in decreeing that the contract of February 3, 1896, was binding on the parties only until the date of the decree dissolving the partnership. The agreement of February 3, 1896, was an account stated of past transactions, and contained stipulations regarding the future conduct of the business. This agreement is not an article or a contract of copartnership. It is evidence tending to show that a copartnership existed. That copartnership ceased to exist when it was dissolved by a decree of

the Circuit Court, and it is proper that the business be wound up as of the date of the dissolution of the partnership.

Second. It is insisted that the court erred in decreeing that in case there was sufficient property of the partnership when sold to bring an amount sufficient to pay to Ruggles the amount found due him from the business, that in that event, the shares of stock belonging to the partnership in the lumber company and in the railroad company should be divided equally between complainant and defendant. This presents the question as to whether or not the stock in the two corporations shall be sold or divided in specie. The general rule it that a sale shall be had of what remains of partnership property after the debts are paid. The reason of the rule is that a sale furnishes the best means of ascertaining the value of the property, and its equal division. 3 Bates on Partnership, 974. But under the facts in this case, we think the question addressed itself to the sound discretion of the court. In the exercise of that discretion, the trial judge decreed that said shares of stock should be divided equally between the complainant and defendant, unless it become necessary to sell them in order to pay debts of the firm, and in that event, only enough thereof should be sold as will be sufficient to pay any debts remaining unpaid after all the other property of the firm had been exhausted. The decision of a question which is within the discretion of the trial judge will not be disturbed on appeal, except it clearly appears that such discretion was abused. It does not appear that there was an abuse of this discretion in this case. Each share of stock is of equal value. The entire amount of stock is susceptible of equal and exact division in specie. If there is no need of its sale to pay debts, it should be divided as decreed by the court below. Kelley v. Shay, 206 Pa. 205, 55 Atl. 925; Harper v. Lamping, 33 Cal. 641. Each of these assignments is without merit.

The remaining errors assigned by complainant were abandoned at the hearing.

Upon the whole case, we are satisfied with the holdings of the court below, and its decree is affirmed.