KNOXVILLE GAS CO. v. CITY OF KNOXVILLE et al.

(District Court, E. D. Tennessee, N. D.     September 23, 1918.)

No. 27.

1. GAS ⊂⊃14(1)—GAS COMPANIES—CHARGES—FRANCHISE ORDINANCE—CONTRACT.

   The voluntary acceptance by a gas company of an ordinance granting it a franchise on condition that it should never charge more than a stated price for gas to consumers created a contract which, if within the powers of the city, is binding on the company during its term.

2. GAS ⊂⊃14(1)—CONTRACT FIXING RATES—CONSTITUTIONALITY.

   A contract between a gas company and a city, fixing a maximum price to be charged by the company for gas, if reasonable and valid when made, cannot be set aside by a court of equity as confiscatory and unconstitutional, because subsequent conditions have made such rate unremunerative.

3. GAS ⊂⊃14(2)—GAS COMPANIES—POWER OF CITY TO FIX RATES—CONDITIONAL FRANCHISE.

   Under Shannon's Code Tenn. 1896, § 2208, providing that a gas company shall not use the streets of a city "until the consent of the

municipal authorities shall have been first obtained, and an ordinance shall have been passed prescribing the terms on which the same may be done," a city has authority in such ordinance to fix maximum rates to be charged by the company.

4. GAS ☞14(2)—GAS COMPANIES—REGULATION OF RATES.

A statute providing that gas companies shall charge reasonable rates, not exceeding a rate named, does not impair the right of a city, authorized by another statute to prescribe terms on which a gas company may use its streets, to prescribe a maximum rate as one of such terms.

In Equity. Suit by the Knoxville Gas Company against the City of Knoxville and others. On motion by complainant for restraining order. Denied.

Lindsay, Young & Young, of Knoxville, Tenn., for plaintiff.

J. Pike Powers, Jr., City Atty., and Cates & Price, all of Knoxville, Tenn., for defendant city of Knoxville.

McCALL, District Judge. Several weeks ago this case was before me on application for temporary injunction upon the bill and affidavits thereto and affidavit of the defendants. After consideration, the application for temporary injunction was denied. Since that time there have been filed a sworn answer and an additional affidavit in support of the bill. The case is before me again, first, for an order setting a date for the hearing of the case; second, for a restraining order; and, third, for a reference to a special master.

There is nothing new presented on this hearing by the plaintiff affecting the merits of the application for an injunction, other than the additional affidavit of Mr. Young, which brings the financial showing of the company down to July, 1918, and tends to intensify the present financial stress of the plaintiff. The application at this time for a temporary restraining order, in view of the fact that the court had recently denied a temporary injunction, is rather an unusual proceeding. The court sees no sufficient reason to change its views in regard to the injunctive features of the case, and the application for temporary restraining order is denied.

It appearing that the bill and answer present questions of law about which no evidence need be taken, it was suggested that the court at this time pass upon the questions of law and its action upon them to determine the order to be made on the application for reference. It was agreed at the hearing that it was a useless and expensive proceeding to send the case to reference, unless the court should be of opinion that the plaintiff upon the record as now presented, assuming that the issues of fact raised by the bill and answer were decided in its favor, is as a matter of law entitled to the redress it seeks.

[1] The undisputed facts on which the questions of law arise are as follows: In about 1854 the Knoxville Gaslight Company (hereafter called the Light Company) was organized and chartered under the laws of Tennessee. It was granted a franchise to furnish the city of Knoxville with gas for a period of 50 years, and for that purpose it was permitted by the city to occupy its streets and alleys with pipes, conduits, and other equipment necessary for the production and distribu-

tion of gas to consumers. In 1903 certain parties acquired the stock of the Light Company and obtained a charter from the state under the name of the Knoxville Gas Company. It was the intention and purpose of the Gas Company to acquire the property, rights, and franchises of the Light Company. This it did after having obtained the consent of the city by ordinance so to do. See section 2, Exhibit A to the bill, and chapter 70, Acts of Tennessee 1889; Shannon's Code of Tennessee 1896, § 2047.

The Gas Company thereafter made application for and was granted a franchise to run for 50 years to operate its plant over and along the streets of said city by ordinance passed September 8, 1903, as amended by ordinance approved September 28, 1903. Section 11 of this ordinance provides that, unless the Gas Company shall, within 20 days from and after the passage and approval of the ordinance, accept the same and the terms thereof, and notify the city of Knoxville of such acceptance in writing, all rights, privileges, and franchises granted to said city should be absolutely forfeited. Within the 20 days so allowed the Gas Company in writing accepted the franchise, together with its terms and conditions, in language as follows:

"To the Mayor and Aldermen of the City of Knoxville: You are hereby notified that the undersigned, Knoxville Gas Company, has accepted and does hereby accept the ordinance passed and approved by you on September 8, 1903, granting it certain rights, privileges, and franchises, as amended by the ordinance passed and approved September 28, 1903, and the terms and provisions of said original ordinance as amended aforesaid."

The Gas Company thereupon entered upon the manufacture and supplying of gas to the city of Knoxville under the terms and conditions of said ordinance as previously accepted by it, and has so continued from that time without complaint, so far as this record shows, until after the entrance of the United States into the war with Germany. On the 5th day of March, 1918, the city of Knoxville passed an ordinance making it unlawful for any person, firm, or corporation supplying any article of public utility within the corporate limits of the city of Knoxville to any consumer or patron intentionally to demand, accept, or charge any unlawful rate or charge for the public utility article or service rendered or required to be rendered under its contract or franchise with the city of Knoxville to a consumer or patron.

Upon this state of fact, the bill is filed to have its contract with the city, made under the ordinance of September 8, 1903, declared ultra vires and void, and to enjoin the city from enforcing as against it the ordinance of March 5, 1918, on the grounds that said two ordinances are in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States, in that they deprive the plaintiff of its property without due process of law and without just compensation. A paragraph of section 7 of the ordinance of September 8, 1903, provides as follows:

"And said Gas Company shall at all times furnish to the consumers of gas within the limits of the city of Knoxville gas of not less than fifteen candle power and shall never charge for the same more than $1.10 per thousand cubic

feet, less 10 cents per thousand cubic feet if paid on or before the 10th day of the succeeding month."

It is alleged in the bill, notwithstanding the Gas Company accepted the franchise as provided in the ordinance, on the terms and conditions that it would never charge more for gas than the maximum rate named in the ordinance, that its acceptance of the franchise in writing is not binding upon it, by virtue of the Fifth and Fourteenth Amendments of Constitution of the United States, and that upon a sufficient showing that it is not earning a reasonable return upon its investment, a court of equity has the power to relieve it from its contract so made, and permit it to charge such a price per thousand cubic feet of gas as will afford it a reasonable net return on the investment.

The city by ordinance said to the company:

"You may occupy my streets and alleys for 50 years with your pipes and conduits and other things necessary to the manufacture and distribution of gas, upon condition that you will never charge more than $1.10 per thousand cubic feet therefor."

The company replied in writing that it accepted the franchise with that condition. I think that constitutes a contract between the city and the Gas Company. Vicksburg v. Vicksburg Water Co., 202 U. S. 453, 26 Sup. Ct. 660, 50 L. Ed. 1102, 6 Ann. Cas. 253; Vicksburg v. Vicksburg Waterworks Co., 206 U. S. 496, 27 Sup. Ct. 762, 51 L. Ed. 1155; Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341; Cunningham v. City of Cleveland, 98 Fed. 657, 39 C. C. A. 211; Illinois Trust & Savings Bank v. Arkansas City, 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518; Omaha Water Co. v. Omaha, 147 Fed. 1, 77 C. C. A. 267, 12 L. R. A. (N. S.) 736, 8 Ann. Cas. 614.

[2] The contract, having been made by the Gas Company before it acquired the gas plant in Knoxville, and, indeed, prior to having any investment there, was made, as I think, at arm's length with the city. The city did not have to grant to the Gas Company this or any other franchise. The Gas Company did not have to accept this or any other franchise not to its liking. It is not alleged in the bill that the city was guilty of deceit, fraud, or duress, or that the plaintiff was in any way overreached in the premises. Hence it must be that the Gas Company entered into the contract freely, voluntarily, and understandingly. That conditions have radically changed within the last year must be admitted. The war with Germany has brought about a great scarcity of labor on the one hand, and largely increased its cost on the other. The cost of all material entering into the making and distributing of gas has also greatly advanced.

Under such circumstances, has a court of equity power to relieve the Gas Company from a contract it voluntarily and understandingly made, and permit it to make another more to its liking, upon the ground that subsequent events have so changed conditions that the contract made by the plaintiff is no longer remunerative? In Blake v. Pine Mountain Iron & Coal Co., 76 Fed. 624, 22 C. C. A. 430, the Circuit Court of Appeals of the Sixth Circuit said:

"It is just these hardships which a court of equity cannot relieve by rescinding contracts, or making new ones by construction, through the process of

balancing blame for nonperformance, and going into parol proof of other or different conditions than those expressed in the contracts themselves, intentions relative to failures not anticipated at the time the contracts were made, or not provided for by the terms of the agreements, as they would have been if the parties had not been improvident in neglecting such protection as was open to them against possible failure and change of conditions. The reasonableness of a contract, its fairness and justice, are to be determined as of the time when the parties entered into it, and so of the intentions involved in the construction of their agreements, and none of these are to be influenced by the force of subsequent changes in events or circumstances."

The Blake Case was cited and followed by the Circuit Court of Appeals for the Sixth Circuit in Ruggles v. Buckley, 158 Fed. 950, 86 C. C. A. 154. So that it would seem to follow that, unless plaintiff can bring itself without that general rule, a court of equity has no power to relieve it, notwithstanding, under the new conditions that have arisen, the contract has become a hardship on the plaintiff, and it cannot be performed without loss.

[3] It is insisted, however, that the city had no power to incorporate into the ordinance a maximum price which the company should charge for gas, because the power to do so had not been delegated to it by the state. Upon this assumption it is argued that the contract made is unenforceable and void as to the plaintiff. By Acts of Tennessee 1887, c. 176, the General Assembly amended Acts of 1875, c. 142, and also the charters of gas companies incorporated under the latter act, by providing, immediately following the clause permitting the use of municipal streets, the following:

"And provided further, that no one of the streets or alleys of said city shall be entered upon or used by said company for laying pipes, conductors, or otherwise, until the consent of the municipal authorities shall have been first obtained, and an ordinance shall have been passed prescribing the terms on which the same may be done." Shannon's Code of Tennessee 1896, § 2208.

The plaintiff was incorporated six years subsequent to the passage of the act of 1887, and is subject to the provisions of that act. In the case of City of Knoxville v. Africa, 77 Fed. 507, 23 C. C. A. 258, the Circuit Court of Appeals for the Sixth Circuit had under consideration section 1921 of Milliken & Vertrees' Code of Tennessee, a provision relating to street railways similar in terms to the provisions, supra, relating to gas companies, as follows:

"No one of the streets of said city shall be used by said company, nor shall any rails be laid down, until the consent of the city authorities has been first obtained, and an ordinance shall have been passed, prescribing the terms upon which the same may be done."

In discussing this provision, Judge Lurton, speaking for the court, said, among other things:

"As we have already seen, the power to grant a right of way upon the public streets resides primarily in the Legislature of the state. This power may be, and is, by provision of the street railroad law, delegated to the municipal government of the city in which the proposed railroad is to be operated. This delegated authority is a trust, to be exercised for the public benefit by ordinance duly passed, and subject to the limitations and for the purposes intended by the statute. What is the extent of the power intrusted to the city government? The answer is plain. 'It is to consent' to the occu-

pation of such of the streets of the city between the termini named in the charter, and within the general route designated therein, as shall be deemed in the interest of the public. * * * The power to 'consent,' and the power to prescribe the 'terms' upon which it will consent, implies the power to refuse consent, or to consent only upon terms and conditions deemed wise"— citing authorities.

While the Africa Case related to street railway franchises, I think by analogy it applied with full force to the act of 1887, supra, relating to gas companies. In McQuillin, Municipal Corporations, § 1644, it is said, if the consent of the municipality is necessary to the use of streets by a public service company, the municipality, upon granting the right to use the streets, may impose conditions on the company which would be binding on the company if it accepts the right to use the streets. In Boerth v. Detroit City Gas Co., 152 Mich. 654, 116 N. W. 628, 18 L. R. A. (N. S.) 1197, the court said:

"Where a gas company is given the right to occupy city streets only .with the consent of the municipality, the city is under no compulsion to grant such right, and as to the price thereof may impose such restrictions as to rates as it sees fit."

The ordinance under consideration having been duly enacted under statutory authority, and the terms and conditions thereof having been voluntarily and understandingly accepted by the Gas Company in writing, constitutes a contract from which the plaintiff cannot be relieved without the consent of the city. Cleveland v. City Ry. Co., 194 U. S. 517, 24 Sup. Ct. 756, 48 L. Ed. 1102; Cleveland v. Cleveland Elec. Ry. Co., 194 U. S. 538, 24 Sup. Ct. 764, 48 L. Ed. 1109; Detroit v. Detroit Citizens' Ry. Co., 184 U. S. 368, 22 Sup. Ct. 410, 46 L. Ed. 592.

Per contra, Home Telephone Co. v. Los Angeles, 211 U. S. 270, 29 Sup. Ct. 50, 53 L. Ed. 176, is cited and relied on by the plaintiff. I think that case is clearly distinguished from the instant case. There it is held that a municipality may not enter into a contract fixing unalterably during the term of franchise the charges for telephone service, and thus disable itself from exercising the power of regulation, under a charter authority to regulate telephone services, and to fix and determine the charges therefor, in the absence of clear and affirmative legislative expression granting such power, or from which such power may be necessarily implied. That is not the question before the court. The clause of the contract under consideration undertakes to bind the Gas Company to only one thing, to wit, that the Gas Company during the life of the franchise will never charge for gas more than the rate named. The city has not undertaken to nor has it contracted away its charter right of "prescribing the terms" on which the Gas Company may occupy its streets. It may yet permit the Gas Company to increase or under proper showing require it to decrease charges for its service. In the Telephone Case, supra, Mr. Justice Moody said:

"It is obvious that no case, unless it is identical in its facts, can serve as a controlling precedent for another, for differences, slight in themselves may through their relation with other facts turn the balance one way or the other."

Other cases cited and relied on by the plaintiff in support of its contention are not in point, as I think, and for that reason it is unnecessary to comment on them.

It is further insisted that the ordinance is not binding on the city, and hence could not be on the Gas Company, since the present or any succeeding law-making power of the city may change or repeal the ordinance outright. In other words, the contract made by virtue of the ordinance is unilateral, and hence voidable by either party. This contention I think is met and refuted in Omaha Water Co. v. City of Omaha, 147 Fed. 1, 77 C. C. A. 267, 12 L. R. A. (N. S.) 736, 8 Ann. Cas. 614, where it is pointed out that municipal corporations have two classes of powers, the one governmental, in the exercise of which their officers may not bind the municipalities beyond their terms of office; the other business or proprietary, in the exercise of which they are governed by the rules as individuals or private corporations. The contract here is ordinancial in form, in the making of which I think the city officials were in the exercise of their business or proprietary functions. Under Knoxville Water Co. v. Knoxville, 189 U. S. 434, 23 Sup. Ct. 531, 47 L. Ed. 887, it may be, if it appeared that by charging the maximum rate the Gas Company was realizing more than a reasonable return, the city might require the Gas Company to charge less than the maximum rate named in the ordinance, since the contract only provides that the Gas Company shall never charge more than the rate named, and does not provide that it may not be required to charge less if the lesser rate appeared to be reasonable. That case is not authority for the insistence that the Gas Company, without the consent of the city, may charge more than the maximum rate, for which it contracted to furnish its patrons with gas.

[4] Section 2209, Shannon's Code of Tennessee (1896), provides that gas companies shall have the privilege of erecting, establishing and constructing gasworks, and manufacturing and furnishing gas in towns, cities, and villages by means of public works; the gas companies being authorized to charge a reasonable price for gas not higher than the price allowed by existing charters to gas companies heretofore chartered in this state, provided that said companies shall never charge more than one cent for every cubic foot of gas used, etc. Chapter 142, Acts of Tennessee of 1875, as amended by chapter 176 of the Acts of Tennessee of 1887.

This section is made a basis for the argument that under its charter the gas company has a right to charge one cent for every cubic foot of gas, if it appeared such charge was reasonable. This probably would be true, but for the provision of section 2208 of Shannon's Code, which provides that the streets and alleys shall not be entered or used by a gas company for laying pipes, conductors, or otherwise, until consent of the municipal authorities shall have been obtained, and an ordinance shall have been passed prescribing the terms under which the same may be done. Under this section the city of Knoxville by ordinance prescribed, as one of the terms on which the Gas Company might use its streets and alleys, that it

would never charge more than $1.10 per 1,000 cubic feet for gas. The Gas Company accepted this franchise, with this limitation, and by so doing it would seem to have waived whatever rights it might otherwise have had under section 2209, supra, and thus during the life of the present contract cut itself off from the benefit of any rights it may otherwise have had under said section.

My conclusions are: (1) The ordinances of which complaint is made are neither violations of the Constitution of the United States or of the state of Tennessee. (2) The municipality of Knoxville, in passing them, was acting within its delegated powers. (3) The ordinance of September 8, 1903, as amended by ordinance of September 28, 1903, conditionally granting to the Gas Company a franchise on certain terms, when accepted by the Gas Company in writing, constituted a valid contract between the city and Gas Company. (4) In the absence of a showing of deceit, fraud, duress, or that plaintiff was overreached in the premises, a court of equity has no power to grant the relief sought by the bill.

The parties may, if they be so advised, treat this as a final holding on the law questions presented, and enter a final decree dismissing the bill, with costs; or, if they be so advised, they may treat this merely as a denial of the application for restraining order, and refer the case to a master, to take proof and report upon such issues of fact as counsel may deem necessary in relation to the capital invested in the enterprise, its running expenses, the amount of its earnings annually, and the net earnings of the company, if any, and any other issues of fact that appear material—the special master to be agreed upon by counsel, or, failing in this, the court will appoint one.

JOHN E. McCALL, Judge of the United States District Court, Western District of Tennessee, sat herein by designation for the judge of the United States District Court, Eastern District of Tennessee.